## STATE of Maine

v.

## William PERFETTO.

Supreme Judicial Court of Maine.

Argued Nov. 19, 1980.
Decided Jan. 30, 1981.

Charles K. Leadbetter (orally), Fernand LaRochelle, Asst. Attys. Gen., Augusta, for plaintiff.

Lipman, Parks, Livingston, Lipman & Katz, John M. Parks (orally), Sumner H. Lipman, David Lipman, Augusta, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

GLASSMAN, Justice.

The defendant, William Perfetto, appeals from a judgment of conviction of manslaughter, 17-A M.R.S.A. § 203(1)(A), following a jury trial in the Superior Court, Somerset County. The only issue raised on appeal is the sufficiency of the evidence to support the verdict of the jury. We affirm the judgment.

On November 3, 1979, the opening day of deer season, Francis Brawn and his son, Thon, kept a prearranged hunting date with the defendant. Brawn and his son had risen early, eaten breakfast and driven to the Athens home of the defendant, arriving just before 6:00 a. m. It was foggy and raining hard. The three hunters separated at approximately 6:00 a. m. The elder Brawn crossed Route 151 to hunt on the western side of the road. Thon had earlier expressed a desire to hunt the eastern side of Route 151 and, at Perfetto's urging, headed with the defendant toward the woods behind the defendant's house.

At some time before 7:00 a. m., the defendant fired no less than two Federal shells from his 12-gauge shotgun. Francis Brawn testified to hearing two shotgun blasts ring out in rapid succession at approximately 6:15 a. m. The defendant has not been consistent in his recollection of how many shots he fired and when he fired. On November 4, in his initial statement to game wardens, the defendant said that he and Thon had separated almost immediately after setting out and that, soon thereafter, the defendant had shot twice at a deer by the pond. On November 15 and again at trial, the defendant stated that he had shot once almost immediately after separating from Thon but that he had not fired again for 35-40 minutes, at which time he fired at a dark shape roughly 4 feet wide and 4½ to 5 feet tall and showing a flash of white, which he took to be a deer lying down then springing. Before the defendant could investigate the results of this shot, he saw a deer clearly off to his left and shot again. He followed this deer and, not finding it, returned to his home at 7:30 or 8:00 a. m. Neither Francis Brawn nor the defendant testified to having heard more than three shots before 7:00 a. m.

Although there is disagreement as to the time at which Francis Brawn returned to the Perfetto residence, there appears to be agreement between Perfetto, his wife and

Francis Brawn that at approximately 9:45 a. m. they all heard a succession of three shotgun blasts. Despite the dispute in the testimony concerning the time at which Brawn had returned to the Perfetto home, it is clear that he had returned at some time between 8:00 a. m. and 10:00 a. m. At some point after returning to the defendant's home, Francis Brawn became worried by Thon's absence, in particular because the defendant said he did not know Thon's whereabouts. The defendant told Brawn that he and Thon had separated, Thon intending to hunt north to cut across Route 151 and join his father. This surprised Brawn, who knew that Thon had intended to set his surveyor's compass to lead him back to the field behind the defendant's home, east of Route 151. The compass still bore this setting when Thon's body was found.

Brawn searched for Thon in the afternoon, as the rain continued, at first alone and later accompanied by the defendant. In the late afternoon, they called in game wardens. Thon's body was found early the next morning east of Route 151. The body was partially submerged in water and showed a head wound. Near the body, police found a piece of white plastic wadding, consistent with the type used in 12-gauge shotgun shells and consistent with an abrasion on Thon's cheek. Some six feet away, police found an alder tree apparently damaged by a shotgun blast. Near this tree on the ground lay two pieces of red plastic, later found to fit together, consistent with discs used to pack 12-gauge Federal shotgun shells.

Postmortem investigation revealed that Thon had died from a shotgun wound to the head at some time between 1:00 a. m. and 10:00 a. m. on Saturday, November 3. The fatal shot had been fired from twelve to twenty feet from the deceased but probably closer to twenty feet. Analysis of the stomach contents, coupled with knowledge of the time Thon had eaten breakfast, narrowed the probable time of death to between 6:30 and 7:30 a. m. This time of death is confirmed by evidence that the victim's watch had stopped at 8:11 a. m.,

November 3. A jeweler who fixed the water-soaked watch after Thon's death testified that if submerged in water such a watch probably would run for twenty minutes to a half hour, gaining approximately an hour as it ran.

No spent shotgun shells were found in the area of Thon's body. The defendant gave police three spent 12-gauge shells, which he said he had picked up immediately after firing, although Francis Brawn testified that the defendant had told him he had gone back for the spent shells.

■ The defendant contends the evidence is insufficient to establish beyond a reasonable doubt that he caused the death of the deceased or that he had the requisite culpable state of mind. The standard for appellate review of a jury verdict is a strict standard:

> In reviewing the sufficiency of the evidence to support a verdict, we give due deference to the jury's evaluation of the evidence, *State v. Flaherty*, Me., 394 A.2d 1176, 1177 (1978), resolve all factual questions in favor of the jury's verdict, *State v. Boyer*, Me., 392 A.2d 41, 42 (1978), and then "determine whether there was credible evidence from which the jury would be justified in believing beyond a reasonable doubt that the defendant was guilty." *State v. Flaherty, supra* at 1177. *State v. Howard*, Me., 405 A.2d 206, 213 (1979).

Thus, the defendant's conviction must stand unless on the evidence presented " 'no rational trier of fact could [find] proof of guilt beyond a reasonable doubt.' " *State v. Lagasse*, Me., 410 A.2d 537, 542 (1980), *quoting Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979).

On the question of whether the evidence was sufficient to establish that the defendant fired the shot which caused the victim's death, the following facts support the jury's conclusion: At about the time of death, the defendant was hunting in the area in which the deceased was killed. The defendant was carrying the kind of weapon that caused Thon's death. The defendant fired

his weapon at about the time of death. In the area of the body, there was found residue from ammunition of the type used by the defendant. Neither the defendant nor the deceased's father heard any other shots at or about the time of death. It was perfectly rational for the jury to infer from these facts that the defendant fired the shot which caused the victim's death.

■ The defendant contends that, even if the evidence was sufficient to establish that he caused the victim's death, it is insufficient to establish the requisite culpable state of mind but rather establishes that the killing was an accident. Every manslaughter as defined by 17 A M.R.S.A. § 203(1)(A) is an accident in the sense that it is an unintended killing. The mental state required is recklessness or criminal negligence. *Id.* In the context of a homicide charge, recklessness is the actor's conscious disregard of a risk that his conduct will cause the death of a human being. *See* 17–A M.R.S.A. § 10(3)(A). In the same context, criminal negligence is the actor's failure to be aware of a risk that his conduct will cause the death of a human being. *See* 17–A M.R.S.A. § 10(4)(A). The evidence here was sufficient to permit a rational jury to conclude that the defendant acted with one or the other requisite culpable mental state.

Because November 3 was the first day of hunting season, the defendant could anticipate that others would be in the woods hunting. He knew that the victim was in the immediate area. The fatal shot was fired from no more than twenty feet away from the victim. The victim was dressed from head to foot in hunter's red. Thus, the jury could have concluded that the defendant fired while consciously disregarding the risk that his shot might cause the death of a human being or, in the alternative, that he fired without adverting to such a risk. Indeed, a rational trier of fact could conclude that the defendant fired his weapon without knowing at what he was firing.

Of course, whether the conduct is reckless or negligent, the disregard of the risk or the failure to be aware of the risk, "when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." 17–A M.R. S.A. § 10(3)(C) and (4)(C). While engaged in a recreational activity, the defendant was carrying and using a lethal weapon. He was aware that others might be in the area and specifically that the deceased was in the area. A jury could infer that he fired his weapon without knowing at what he was firing. A rational jury could conclude that this was a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation. Innumerable Maine citizens take to our woods during hunting season to hunt deer. Many visitors enter our woods for the same purpose. It is not an exaggeration to state that during hunting season there is virtually an army in the Maine woods. Under such circumstances, a hunter who fires a deadly weapon at a sound or at a sight without being certain at what he is shooting has grossly deviated from the standard of conduct of a reasonable and prudent person. The reasonable and prudent hunter will bear the risk of loss of legitimate prey to avoid the risk of the destruction of human life. He will neither disregard the risk that he may cause the death of another human being nor fail to be aware of such risk.

The entry is:

Judgment affirmed.

All concurring.