STATE of Maine

v.

Jean CARISIO.

Supreme Judicial Court of Maine.

Argued Nov. 7, 1988.
Decided Dec. 21, 1988.

Mary Tousignant, Dist. Atty., Anne H. Jordan (orally), Deputy Dist. Atty., Alfred, for the State.

Thomas Van Houten (orally), Wood & Van Houten, P.A., Sanford, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

The defendant, Jean Carisio, appeals from a judgment of the Superior Court (York County; *Brodrick, J.*) entered on a jury verdict finding her guilty of manslaughter, Class B, 17–A M.R.S.A. § 203 (1983 & Supp.1987). Carisio contends that (1) the statutory definitions of "Recklessly" and "Criminal Negligence" are so vague as to render the Maine manslaughter statute unconstitutional; (2) she was denied her constitutionally protected right to a speedy trial; (3) the trial court erroneously found

that her out-of-court statements were voluntary; and (4) the evidence is insufficient to support the verdict of the jury. We affirm the judgment.

Carisio was driving south on Ridge Road in York on May 10, 1986, a clear and sunny day. Without slowing or stopping at the stop sign located where Ridge Road intersects the Old Post Road, she entered the intersection and collided with a Ford Escort operating on the Post Road. As a result of the impact, Kevin Clauson, a three year-old passenger in the Escort, died of a burst thoracic aorta.

A few hours after the accident, Carisio was interviewed by a police officer. During the interview, she stated that as she approached the intersection, she saw both the stop sign for her lane as well as the Clauson's car coming up the hill. Nevertheless, she said, she proceeded through the intersection because she thought she could clear the intersection before the Ford Escort entered it.

Carisio was indicted on a single count of manslaughter, in violation of 17-A M.R.S.A. § 203 in August 1986. Pretrial motions were heard by the court in December 1986. At the request of the State and Carisio, the case was assigned a special trial date of March 24, 1987.

On March 24, 1987, after the State and Carisio reached a plea agreement, Carisio entered a plea of guilty to reckless conduct, 17-A M.R.S.A. § 211 (1983),[1] on an information filed by the State, and the State dismissed the manslaughter indictment. However, the Superior Court (*Cole, J.*) rejected the agreed upon sentence recommen-

dation and permitted Carisio to withdraw her guilty plea to reckless conduct. After a hearing in May of 1987 on Carisio's April motions to determine if the manslaughter indictment, dismissed by the State as part of the plea agreement,[2] remained pending on the court's trial calendar after the court's rejection of the plea agreement, Carisio was indicted again for manslaughter in May of 1987.[3] She filed a motion to dismiss the second manslaughter indictment on July 6, 1987, alleging denial of her right to a speedy trial, prosecutorial delay, harassment, abuse of discretion and a denial of due process. After denial of that motion (*Brodrick, J.*), the case was assigned, on the request of both parties, for trial on November 30, 1987. Carisio's appeal followed her conviction after a jury trial.

## I.

■ Carisio first asserts that the Maine manslaughter statute, 17-A M.R.S.A. § 203, is unconstitutionally vague. She argues that there is no guidance or standard by which to determine what is a "gross deviation" from the conduct of a reasonable person. We disagree.

The statute provides that "a person is guilty of manslaughter if he recklessly, or with criminal negligence causes the death of another human being." 17-A M.R.S.A. § 203. Both "recklessly" and "criminal negligence" require that the conduct of the actor be in "gross deviation from the standard a reasonable and prudent person would observe in the same situation."[4]

---

1. 17-A M.R.S.A. § 211 (1983) provides as follows:
   1. A person is guilty of reckless conduct if he recklessly creates a substantial risk of serious bodily injury to another person.
   2. Reckless conduct is a class D crime.

2. The trial court ruled that the manslaughter indictment had been dismissed and that the dismissal was not conditional and could not be rescinded. We do not address the correctness of that ruling.

3. The reckless conduct charge was subsequently dismissed by the State.

4. 17-A M.R.S.A. § 35(3) & (4) (1983) define "recklessly" and "criminal negligence" as:

3. "Recklessly."
A. A person acts recklessly with respect to a result of his conduct when he consciously disregards a risk that his conduct will cause such a result.
B. A person acts recklessly with respect to attendant circumstances when he consciously disregards a risk that such circumstances exist.
C. For purposes of this subsection, the disregard of the risk, when viewed in the light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and pru-

A criminal statute is unconstitutionally vague if it fails to give fair warning of its scope, in accordance with due process requirements, and it fails to give fair warning if "a person of ordinary intelligence" could not "reasonably understand" that it forbids the conduct for which he is criminally charged. *State v. Gray,* 440 A.2d 1062, 1064 (Me.1982). In determining whether a statute is unconstitutionally vague, the common law and judicial determinations dealing with the words of the statute, as well as the statutory language itself, may be referred to. *State v. Davenport,* 326 A.2d 1, 6 (Me.1974). Maine case law makes amply clear that criminal negligence and recklessness, requiring as they do a finding of gross deviation from reasonable and prudent conduct, are capable of understanding by and give fair warning of what conduct is forbidden to a person of ordinary intelligence. *State v. Crocker,* 435 A.2d 58, 65–67 (Me.1981) (explaining difference between "ordinary" civil negligence and criminal negligence); *State v. Davis,* 398 A.2d 1218, 1219 (Me. 1979) (criminal negligence); *State v. Dodge,* 397 A.2d 588, 593–94 (Me.1979) (recklessness). *See also State v. Longley,* 483 A.2d 725, 732 (Me.1984) (criminal negligence and recklessness both involve gross deviation from reasonable and prudent conduct).

## II.

■ Carisio further argues that the trial court (*Brodrick, J.*) erroneously denied a motion to suppress statements made by Carisio after the accident. Because of her condition, she contends that these statements were not voluntary, and that her condition precluded a knowing and intelligent waiver of her constitutional rights.

We uphold the trial court's denial of the motion to suppress.

After the accident, Carisio was taken to a hospital to be examined as a precautionary measure. At the time, she was described as shocked and upset, but not hysterical. An injection of valium to sedate her and to relieve her stress was prescribed for her.

She was interviewed by Officer Regina Andrews of the York Police Department in the hospital, about three and one-half hours after the accident. During the interview, Carisio was fully clothed and seated. Her husband was present. She was read the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and she waived her rights referred to in the warnings both orally and in writing. There was some conflicting testimony, but Officer Andrews testified that Carisio was calm, lucid and spoke in detail about the accident and the circumstances preceding the accident. Although she had been administered valium, the physician testified that valium affects people in different ways. It was given to Carisio to calm her down and the motion justice found that it served its purpose.

A confession is voluntary if it results from the free choice of a rational mind, if it is not the product of coercive police conduct, and if under all the circumstances, its admission would be fundamentally fair. *State v. Mikulewicz,* 462 A.2d 497, 501 (Me.1983). The consumption of drugs does not automatically render a subsequent confession involuntary, *State v. Rowe,* 479 A.2d 1296, 1299 (Me.1984), nor does a defendant's drug-related condition make her incapable of knowingly and intelligently waiving her rights referred to in the *Miranda* warnings. *State v. Bleyl,* 435 A.2d 1349, 1360–61 (Me.1981). Rather, the cir-

dent person would observe in the same situation.
4. "Criminal negligence."
A. A person acts with criminal negligence with respect to a result of his conduct when he fails to be aware of a risk that his conduct will cause such a result.
B. A person acts with criminal negligence with respect to attendant circumstances when he fails to be aware of a risk that such circumstances exist.

C. For purposes of this subsection, the failure to be aware of the risk, when viewed in the light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

cumstances of each case must be evaluated to determine if a defendant's drug-related condition made her incapable of acting voluntarily, knowingly and intelligently. *Id.* The evidence here supports the findings of the motion justice that the valium made Carisio more composed and less agitated, and we find no error in his denial of the motion to suppress. *State v. Clark,* 475 A.2d 418, 420 (Me.1984).

### III.

Carisio next contends that she was deprived of her right to a speedy trial under the United States and Maine constitutions because of the span of approximately sixteen months between the indictment and trial. We see no such deprivation.

The right of an accused to a speedy trial is guaranteed by both the state and federal constitutions. Me. Const. art. I, § 6; U.S. Const. amend. VI. We have used the balancing test of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to analyze speedy trial cases under both our state and federal constitutions. *See State v. Murphy,* 496 A.2d 623, 627 (Me.1985).

In *Barker,* the Supreme Court articulated a balancing test that takes into account all of the circumstances of the case at hand. *Murphy,* 496 A.2d at 627. The court identified four factors to be considered in evaluating an alleged denial of the right to a speedy trial: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant arising out of the delay. *Id.*

▉ Here, the length of the delay between the indictment and the trial, sixteen months, gives rise to a presumption that such a delay is unnecessary in a relatively uncomplicated manslaughter case. *See State v. Cadman,* 476 A.2d 1148, 1151 (Me. 1984); *State v. Goodall,* 407 A.2d 268, 280 (Me.1979). However, in analyzing Carisio's speedy trial claims, it is clear that they are without merit. None of the delays in time were caused solely by the State's action. The only long delay unrelated to legitimate motions filed by the parties resulted from the court's rejection of the plea and the

agreed upon sentence recommendation; and a defendant is charged with knowing that a court is not bound to accept a negotiated plea arrangement. There is no indication that any delay was caused by the State's foot-dragging, nor is there any indication of prosecutorial bad faith.

In addition, Carisio did not assert her right to a speedy trial until July of 1987, five months before the trial, making less credible her claim that any delay was undue or any prejudice substantial. *Murphy,* 496 A.2d at 628. *See also State v. Steeves,* 383 A.2d 1379, 1383 (Me.1978).

▉ Finally, potential prejudice must be evaluated in light of the three interests the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concerns of the accused; and (3) to limit the possibility that the defense will be impaired. *Steeves,* 383 A.2d at 1379.

Carisio was not incarcerated before trial and there was no apparent impairment of her defense. Although Carisio contends she was unable to recall all of the facts of the case because of the emotional distress she endured from the wait, this is diminished by the fact that Carisio did make a statement to the police hours after the accident. Although undoubtedly she did suffer some distress while she awaited trial, the Superior Court did not find sufficient prejudice to justify a dismissal on speedy trial grounds, and there was no error by the court in rejecting Carisio's speedy trial claim.

### IV.

▉ Finally, Carisio argues the evidence is insufficient to establish beyond a reasonable doubt that she had the requisite culpable state for manslaughter.

When a conviction is challenged on the basis of insufficiency of the evidence, this court gives due deference to the jury's evaluation of the evidence and resolves all of the factual questions in favor of the jury verdict. *State v. Perfetto,* 424 A.2d 1095, 1097 (Me.1981). The defendant's conviction

must stand unless on the evidence no trier of fact rationally could find proof of guilt beyond a reasonable doubt. *Id.*

In this case, Carisio's driving was observed by three people, two of whom were unrelated to any of the parties involved in the collision. As the two unrelated witnesses approached the intersection, they both noticed Carisio's vehicle come "barreling" down Ridge Road, never slowing, hesitating, braking or stopping at the stop sign. Instead, the vehicle went "flying" by one of the witnesses and made no maneuvers to avoid the collision. A passenger in the Ford Escort testified that Carisio pulled out and went around another vehicle stopped at the stop sign before entering the intersection.

Furthermore, in Carisio's interview with Officer Andrews, she stated that she saw both the stop sign for her lane, as well as the Clauson's car coming up the hill. She said she proceeded through the intersection because she thought she could clear it before the Ford Escort entered it.

And finally, Ralph Libby, a certified accident reconstructionist, testified that in his opinion, Carisio failed to stop at the stop sign and was traveling at least thirty-five miles per hour at the point of impact.

Given the evidence, a trier of fact rationally could find beyond a reasonable doubt that Carisio was guilty of recklessly or with criminal negligence causing the death of Kevin Clauson. *State v. Barry*, 495 A.2d 825, 826 (Me.1985).

The entry is:

Judgment affirmed.

All concurring.