### STATE of Maine

v.

### Norman G. KEHLING.

Supreme Judicial Court of Maine.

Argued Nov. 19, 1991.
Decided Dec. 27, 1991.

Michael Cantara, Dist. Atty., Alfred, David Gregory (orally), University of Maine School of Law, Portland, for the State.

Craig T. Gardner (orally), Gardner, Gardner & Murphy, Saco, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

After a jury trial the Superior Court (York County, *Brodrick, J.*) convicted de-

fendant Norman G. Kehling of arson, 17–A M.R.S.A. § 802 (Supp.1991), and sentenced him to 40 years, the maximum term of imprisonment for that Class A offense. On Kehling's appeal, we find no reversible error in either his conviction or his sentence. Contrary to his contentions, the admission in evidence of his statement to his probation officer did not violate his privilege against self-incrimination under the United States or Maine Constitution and the playing to the jury of a recorded telephone conversation between him and his wife did not violate Maine's Interception of Wire and Oral Communications Act, 15 M.R.S.A. §§ 709–713 (Supp.1991). As to the sentence, we find no misapplication of principle or abuse of discretion in the court's imposition of the maximum term of years.

The jury found Kehling guilty of willfully setting a nighttime apartment house fire in Biddeford. The trial evidence established the following circumstances of the crime: In the evening of November 3, 1989, Kehling went to a Biddeford bar to celebrate his job promotion at a local waste-treatment plant. Late in the evening, after he had consumed a considerable amount of alcohol, he got into a fight with another patron and the bar owner and was ejected from the bar. Outside the bar, Kehling, shouting profanities and threatening to stab and shoot the bar owner and to burn the bar down, insisted that he be readmitted. He resisted the attempts of his wife to get him to leave the area. After several warnings that his drunken and disorderly conduct would lead to his arrest, the Biddeford police did arrest him and took him to the police station. At the station, he threatened to do physical harm to the arresting officer and threatened to blow up the police station.

Released on bail, Kehling went to his brother's apartment where he made a telephone call to his wife, threatening to kill her, their son, and his wife's mother. He called his mother-in-law and repeated his threats to kill his wife. He went to his mother-in-law's house and tried to push through her door while making threats to kill her and her daughter. Finally he returned to the Biddeford apartment he shared with his wife, and there other tenants in the building heard him threaten his wife. "I'm going to burn you out, I'm going to get you," he screamed, adding emphasis to his threat with profanity. When his mother-in-law called the apartment to check if his wife was all right, he answered the phone and said, "She's dead and you're next." Sometime later the wife left the apartment. Just before 3:00 a.m. in the early morning of November 4, Kehling set fire to the apartment and hurriedly left the apartment house, without doing anything to warn ten other tenants who were asleep in the building. In the ensuing conflagration, from which those other persons managed to escape with no help from defendant, the whole apartment building was destroyed beyond repair.

On account of that fire, the York County grand jury indicted Kehling for arson. Prior to trial, he filed a motion to suppress two statements he made in telephone calls later on the day of the fire, one to his probation officer and the other to his wife. The Superior Court refused to suppress either statement. Following a 3½–day trial, the jury found defendant guilty after one hour of jury deliberation. The court then ordered a psychological evaluation and a presentence report; the report recommended the maximum sentence. The court on June 1, 1990, after hearing, sentenced Kehling to 40 years imprisonment.

## I.

### Kehling's Statement to His Probation Officer

■ At the time of the fire Kehling, as a result of a prior conviction, was on probation subject to conditions that he notify his probation officer of any change of address and of any contact with the police and that he answer any reasonable question of his probation officer. Sometime during the morning of November 4, 1989, Kehling called his probation officer's home and left a message on the officer's telephone answering machine asking the officer to call him back. The probation officer called the Biddeford Police Department and learned

that Kehling was going to be arrested and questioned about the fire in his building. When in the afternoon the probation officer returned Kehling's call, Kehling told him that he had moved from his apartment because of a fire. The probation officer asked defendant "What happened?" and defendant replied: "[I] was on the telephone when [I] noticed a fire in the apartment and [I] fled from the house."

On defendant's pretrial motion to suppress the admission of that statement, the Superior Court held that since defendant was not in custody at the time he made the telephone statement and since he was not compelled to answer the probation officer's question, the statement was admissible. Defendant argues on appeal that the right to remain silent was self-executing in the circumstances of this case and that the probation officer's failure to give a *Miranda* warning makes defendant's response to the question "what happened" inadmissible. We uphold the denial of the motion to suppress.

The case at bar is on all fours with *Minnesota v. Murphy*, 465 U.S. 420, 435, 104 S.Ct. 1136, 1146, 79 L.Ed.2d 409 (1984), in which the Supreme Court held that "a State may require a probationer to appear and discuss matters that affect his probationary status" and that "such a requirement, without more, does not give rise to a self-executing [Fifth Amendment] privilege." *Murphy* specifically addressed and flatly rejected defendant's present argument that the probation officer's question should be viewed as an attempt to elicit incriminating evidence from him, especially since the officer knew defendant was going to be arrested and questioned: "The mere fact that an investigation has focused on a suspect does not trigger the need for *Miranda* warnings in non-custodial settings, and the probation officer's knowledge and intent have no bearing on the outcome of this case." *Id.* 465 U.S. at 431, 104 S.Ct. at 1144 (citation omitted).

Citing *State v. Carisio*, 552 A.2d 23 (Me. 1988), defendant also argues that his statement to the probation officer was not voluntary under article I, section 6, of the Maine Constitution. In *Carisio* we held that "[a] confession is voluntary if it results from the free choice of a rational mind, if it is not the product of coercive police conduct, if under all the circumstances, its admission would be fundamentally fair." *Id.* at 25. Nothing in the present record suggests any violation of *Carisio*. Kehling initiated the contact with his probation officer that morning. He made his incriminating statement on the probation officer's return call which lasted no more than a couple of minutes. The probation officer did not threaten or coerce Kehling, nor did he threaten Kehling with arrest if he did not talk. On the contrary, the officer testified that if Kehling had said that he did not want to continue talking, the officer would not have pursued his question any further. The trial court committed no error in finding that defendant's statement was not compelled.[1]

## II.

### *Kehling's Recorded Telephone Conversation with His Wife*

■ Later in the morning of the fire, Kehling telephoned his mother-in-law's house and had a heated conversation with his wife, in the course of which he made incriminating remarks. The mother-in-law made a tape recording of the conversation and that recording was played to the jury at his trial.

By state law, 15 M.R.S.A. § 713, the contents of an "intercepted" wire communication are not admissible in court. A wire communication, however, is not "intercepted" for purposes of the statute, and so is not protected, if either the sender or the receiver has given prior authority for it to

---

1. The lack of any compulsion distinguishes the case at bar from *State v. Castonguay*, 240 A.2d 747 (Me.1968) (*compelled* disclosure made by defendant to federal judge in sentencing on pre- vious federal guilty plea for robbery may not be used against him in subsequent state prosecution for same robbery).

be recorded. *Id.* § 709(4)(C).[2] The admissibility of Kehling's recorded telephone conversation with his wife turns on whether the mother-in-law in making the recording had the prior authority of either or both Kehling and his wife.

In construing the parallel provision of federal law prohibiting the interception of a wire communication except where "one of the parties to the communication has given prior consent to such interception," 18 U.S.C.A. § 2511(2)(c), (d) (Supp.1991), the United States courts of appeals have held that the prior consent may be implied. Those courts define implied consent as " 'consent in fact' which is inferred 'from surrounding circumstances indicating that the party knowingly agreed to surveillance.' " *Griggs–Ryan v. Smith,* 904 F.2d 112, 116–17 (1st Cir.1990) (quoting *United States v. Amen,* 831 F.2d 373, 378 (2d Cir.1987)). In the case at bar, the Superior Court found that both Kehling and his wife knew that the wife's mother had the capacity to record phone calls and both were told by her that their conversation was going to be recorded if they continued to talk. The court held that in the absence of any objection on the part of either, the consent of both to the recording can be inferred. The court's determination that prior consent was to be inferred from the conduct of both parties to the telephone conversation was not erroneous.

### III.

*The 40–Year Sentence*

In his sentence appeal defendant makes two contentions; first, that he should not have been sentenced in the upper range of Class A offenses, and *a fortiori* not for the maximum of 40 years, and, second, that the sentencing justice failed to give proper con-

sideration to the goal of rehabilitation. We reject both contentions.

■ The legislature in its 1988 amendment of 17–A M.R.S.A. § 1252(2)(A) (Supp. 1991) doubling the maximum sentence for Class A crimes "ma[de] available two discrete ranges of sentences for [those] crimes." *State v. Lewis,* 590 A.2d 149, 151 (Me.1991). "Only for the most heinous and violent crimes committed against a person should the [sentencing] court in its discretion consider imposing a basic sentence within the expanded range of twenty to forty years." *Id.* The nature of the crime committed by defendant Kehling in setting an apartment house afire in the early morning hours was sufficiently heinous and violent to justify the imposition of a basic sentence at the top of the upper range recognized by *Lewis.* Out of a feeling of anger and revenge, Kehling willfully set a multiple residential structure on fire just before three o'clock in the early morning when the ten other occupants of the building, including an elderly woman and a young child, would be sleeping and least likely to escape. Having started the fire, he left the building without doing anything to raise an alarm, taking with him his prized football betting cards but leaving his fellow tenants to their fate.

■ Within minutes, the fire was raging. It was only by happy chance that two men driving by the apartment building noticed smoke from the fire and bravely entered the building, going through dense smoke at great personal danger to rouse and evacuate the tenants. Two Biddeford firefighters with considerable risk to their own lives also searched the blazing structure for additional persons. The apartment house was a complete loss and the tenants lost all their belongings. The subsequent death of one elderly victim was believed by some to have been hastened by the disruption and

---

2. 15 M.R.S.A. § 713 (Supp.1991) reads:
   The contents of an interception shall not be admissible in court, except that the contents of an interception of any oral or wire communication which has been legally obtained under the laws of another jurisdictlon in which the interception occurred, shall be admissible in the courts of this State, subject to the Maine Rules of Evidence.

15 M.R.S.A. § 709(4)(C) (Supp.1991) reads:
   **4. Intercept.** "Intercept" means to hear, record or aid another to hear or record the contents of any wire or oral communication through the use of any intercepting devise by any person other than:

   .    .    .    .    .

   **C.** A person given prior authority by the sender or receiver.

loss caused her by the fire. The sentencing court found that defendant set the fire to express his anger against his wife by destroying her apartment and belongings, and that he had no concern whatsoever for the fact that he put ten or more innocent people at mortal risk. The court also noted that, but for the heroism of the good Samaritans who rescued the ten apartment residents, the charge on which defendant was convicted could have been murder. On these facts we cannot find any misapplication of principle in the imposition of the basic sentence of 40 years, the maximum allowed by statute, for the nighttime apartment house arson of which defendant was convicted.

■ Nor do we find any abuse of discretion in the sentencing court's conclusion that nothing in the record justified a mitigation of that basic sentence. Specifically, we find unpersuasive the only argument defendant makes in regard to mitigation, namely, that the court did not give proper weight to the sentencing goal of rehabilitation. The court concluded that in defendant's circumstances rehabilitation was not a mitigating factor. Although defendant made statements to the court that he wanted to get treatment and become a part of society, he had made identical statements at his sentencings for prior violent crimes. Those crimes included two felony assaults, one of which involved a series of prior violent encounters with strangers whom defendant without provocation stopped on the street and attacked. Thus the court quite properly concluded that defendant's expressed interest in rehabilitation was less than sincere. The court's unfavorable assessment of defendant's prospects for rehabilitation was confirmed by Dr. Bruce Kerr who, in his presentence psychological evaluation of defendant, concluded that defendant's expressed remorse was not real, that defendant had convinced himself that he had not committed any crime, and that he was extremely angry at the people he perceived had aided in his conviction. The psychological evaluation concluded that the prognosis for Kehling's rehabilitation was very bleak because of his severe antisocial personality disorder. The degree of mitigation called for by the circumstances of

the offender is, in the first instance, for the sentencing court to decide, *see State v. Hallowell,* 577 A.2d 778, 781 (Me.1990), and we accord great deference to the court's decision in that regard. *See State v. Weir,* 600 A.2d 1105 (Me.1991). On the sentencing record before the court, it committed no abuse of discretion in rejecting Kehling's chances of rehabilitation as a factor mitigating the basic sentence.

■ Trial courts in imposing sentence should, in order to make possible effective appellate review, first determine the appropriate basic sentence by considering the particular nature and seriousness of the offense, and then apply whatever mitigation and enhancement of the basic sentence all other pertinent sentencing factors justify. *See State v. Lewis,* 590 A.2d at 150. In addition to "the rehabilitation of convicted persons," the prevention of further crime through "the restraint of convicted persons when required in the interest of public safety" is a statutorily stated goal of sentencing. 17–A M.R.S.A. § 1151(1) (1983). Furthermore, in reviewing the propriety of a sentence, one factor we consider is "the protection of the public interest." 15 M.R.S.A. § 2155(1) (Supp.1991). The necessity of protecting the public through incapacitation is a significant aggravating factor that could enhance Kehling's basic sentence and offset any mitigating factors. Kehling's history of blind anger and repeated violence and his disregard of the safety of others, coupled with his expressed intent to "get back at" those involved in his conviction, demonstrates the propriety of the sentencing court's consideration of the interest of the public safety.

In sum, we find no reversible error in the maximum 40–year sentence imposed upon Kehling for setting a nighttime apartment house fire.

The entry is:

Judgment affirmed.

All concurring.