MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2014 ME 70
Docket:        Kno-13-275
Argued:        April 9, 2014
Decided:       May 22, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.


GLENN A. GRIFFIN

v.

CRISTIE J. GRIFFIN


ALEXANDER, J.

[¶1]   Cristie J. Griffin appeals from a divorce judgment entered in the District Court (Rockland, *Worth, J.*) that awarded primary residence of the parties' young child to Glenn A. Griffin and rights of contact to Cristie. Cristie presents several issues on appeal, of which we give extended consideration to two: (1) whether the court erred in denying Cristie's motion in limine and permitting Glenn to play recordings at trial that he had made of telephone conversations between Cristie and the child because, she asserts, the recordings were made in violation of Maine's Interception of Wire and Oral Communications Act (the Act), 15 M.R.S. §§ 709-713 (2012),[1] and (2) whether the court erred when it ordered that the appointed guardian ad litem (GAL) approve, post-judgment, the counselor for

---

[1] Certain portions of the Interception of Wire and Oral Communications Act, 15 M.R.S. §§ 709-713 (2012), were amended after the operative events in this case by P.L. 2013, ch. 80, §§ 1-4 (effective Oct. 9, 2013) and by P.L. 2013, ch. 267, § B-5 (effective Oct. 9, 2013).

2

Cristie, who was ordered to attend counseling as a condition for her continued rights of contacts with her child. Concluding that the court erred in extending the duties of the GAL beyond the entry of the final divorce judgment, we vacate that portion of the judgment ordering that the GAL continue services post-judgment to approve Cristie's counselor. We affirm the judgment in all other respects.

[¶2]  In addition to the two issues addressed above, Cristie argues that the court abused its discretion or erred by (1) allowing Glenn's recordings to be played at trial because the recordings were not original, complete, or authentic; (2) not "disqualifying" the GAL's report because, in Cristie's view, the GAL failed to conduct a thorough investigation, report pertinent findings, and address all of the statutorily required best interests of the child factors, *see* 19-A M.R.S. § 1507(4) (2013), and because the report illegally discloses the recordings that were illegally obtained; (3) limiting Cristie's examination of the GAL about the contents of her report at trial, in violation of due process; (4) ordering Cristie to pay a portion of the GAL's fees without determining the reasonableness of those fees or finding that Cristie has the ability to pay; and (5) ordering Cristie to provide to her counselor a copy of the telephone recordings.

[¶3]  We conclude that the phone conversations were properly recorded and that the court did not err or abuse its discretion in admitting and considering the contested recordings and in requiring that the recordings be provided to Cristie's

counselor. Nor has Cristie demonstrated that the GAL's investigation, including multiple interviews and sixty-nine hours of work, was insufficiently thorough or that her report was incomplete, or that the court improperly limited the examination of the GAL, or abused its discretion in requiring Cristie to pay the portion of the GAL's costs.

## I. CASE HISTORY

[¶4] Glenn and Cristie Griffin married in 1999 and have a daughter who was born in October 2006. Glenn filed a complaint for divorce in December 2011, at which time he moved out while Cristie and the child stayed in the family home in Washington. In May 2012, the Family Law Magistrate (*Mathews, M.*) appointed a GAL, and ordered that the costs for the GAL's services be paid by the parties. The appointment order placed no limits on the services that the GAL might perform or the fees that the GAL might charge, but it did limit the term of the GAL's appointment to "the duration of the case."[2]

[¶5] After Glenn moved out of the home, Cristie demonstrated a pattern of attempting to control Glenn's interactions with their child, which included her plan to relocate with the child to Bangor on September 1, 2012. When Glenn learned that Cristie intended to move the child away from the only home, school, and

---

[2] After the GAL order was entered in this case, the District Court leadership promulgated a new format for GAL appointments, requiring specific directions to the GAL and express limits on the fees of the GAL.

4

community the child had ever known at a time when the divorce proceeding was becoming increasingly contentious, he moved for a temporary restraining order and preliminary injunction to prevent Cristie from moving the child. Nonetheless, Cristie moved to Bangor on or around August 18, 2012.

[¶6] On August 23, 2012, after a hearing, the court (*Worth, J.*) entered an interim order assigning shared parental rights and responsibilities to Glenn and Cristie, but allocating primary residence of the child to Glenn at the family home in Washington. Cristie was granted contact with the child from Friday evenings to Sunday evenings. The August 23 order also directed the parties to "refrain from making . . . any disparaging statements about the other party in the presence of the other party or the minor child." Additionally, the order stated that both parties "shall have reasonable telephone contact with the minor child."

[¶7] Glenn moved back into the family home in Washington, and the child lived with him at the home during the week. Beginning in August 2012, Cristie had a twenty-five to thirty-minute cell phone conversation with the then five- to six-year-old child each evening when the child was at Glenn's home. Glenn sometimes overheard portions of Cristie's side of these conversations, because Cristie spoke loudly through the phone. At times, he heard Cristie make disparaging statements about him and make other emotionally harmful comments to the child, such as indicating to the child that Glenn did not know how to parent

the child or how to take care of her, suggesting to the child that she "[b]e mean to daddy," telling the child that Glenn cared more about his new girlfriend than he did about the child, and telling the child that Glenn's mother, "Nana," was "stupid." Glenn observed that the child was sometimes unhappy or disturbed after the calls.

[¶8]    Concerned by what he overheard Cristie say to the child, Glenn consulted with his attorney and the GAL.   In November 2012, Glenn recorded some of the conversations between Cristie and the child, using a smartphone and a "Bluetooth device that records." Conversations captured on the recordings were similar to the conversations that Glenn had previously overheard.  Although Glenn was apparently not aware of it at the time, Cristie was also recording her phone conversations with the child.

[¶9]  The recordings revealed that Cristie would at times bully and berate the child, manipulate her emotionally, threaten to stop talking to the child if she did not do as Cristie wanted, criticize the child for not seeming to care enough for Cristie, and scold the child for failing to keep secrets from Glenn.  During one conversation, the child began to cry in response to Cristie's comments.  Cristie continued to make disparaging remarks to the child about Glenn and the quality of care he provided for the child, told the child that Glenn was "pathetic," a "loser," and a "liar," and asked the child to report Glenn's activities to Cristie.

6

[¶10] In December 2012, Glenn filed a motion for contempt, alleging that Cristie was violating the August 2012 interim order by repeatedly making disparaging remarks about him to the child. The court avoided duplicative hearings by deferring consideration of the contempt motion for hearing during the upcoming divorce trial. Cristie moved in limine to exclude from trial, pursuant to the Interception of Wire and Oral Communications Act, Glenn's telephone recordings and all references to them and to exclude the GAL's report because it referenced and relied on the recordings. The court ordered that it would also consider that motion at trial.

[¶11] The court held a trial on the divorce complaint over the course of four days in January and February 2013. At the beginning of the first day, the court heard argument on Cristie's motion in limine and denied the motion, allowing Glenn's telephone recordings to be played at trial. Cristie had also argued before trial began that she had had no opportunity to listen to the recordings prior to trial or to authenticate them, so the court delayed the trial to allow Cristie to listen to the recordings. Cristie did not renew any objection to their admissibility when the recordings were subsequently played during the trial. At trial, Glenn played recordings of four telephone conversations between Cristie and the child. Cristie subsequently played her own recordings of calls she made to the child in

November 2012 and of conversations that she had with Glenn at times when she transferred the child back to Glenn after she had weekend visitation.

[¶12]  On April 17, 2013, the court entered a judgment of divorce and found Cristie in contempt for her violation of the August 2012 interim order because she had repeatedly disparaged Glenn during the phone calls to the child.  The court found that Cristie's remarks "created a significant risk of harm to the young child." The court also found that Cristie was in contempt of the court's interim order when she verbally assaulted Glenn in front of the child during a transfer of the child.

[¶13]  Cristie moved for further findings of fact and conclusions of law with respect to the divorce judgment and the contempt order, to alter or amend the divorce judgment to allow her to have telephone contact with the child while the child was in Glenn's care, and to correct the divorce judgment.  The court granted in part the motion for findings and conclusions concerning the contempt order, finding that Glenn's in-court testimony about what he overheard Cristie say to the child in the nightly phone calls, the GAL's testimony and report, Cristie's testimony, and the parties' recordings played at trial all supported the contempt order.  The court either granted in part or denied Cristie's remaining motions, including denying Cristie's request to amend the divorce judgment to permit telephone contact.

[¶14]   The court entered an amended divorce judgment on May 9, 2013. Like the original divorce judgment, the amended divorce judgment awarded shared parental rights and responsibilities in most respects, except that Glenn was granted responsibility for making all non-emergency health care decisions for the child. The court allocated primary residence of the child to Glenn and rights of contact to Cristie every other weekend during the school year, weekly during the summer, and on or around holidays as agreed by the parties.   The court also ordered that, as a condition of having contact with the child, Cristie must engage in post-judgment counseling with a counselor "approved by the [GAL] to address issues concerning her anger and her co-parenting ability."

[¶15]   In awarding primary residence to Glenn, the court acknowledged that it "would be a somewhat closer case, were it not for the conversations that [Cristie] recorded and that [Glenn] overheard and recorded."   The court found that Glenn, "alarmed by the content of [Cristie's] conversations with [the child]," made the recordings believing it to be in the child's best interests to preserve Cristie's words and for the reasons he had stated in his opposition to Cristie's motion in limine. Cristie timely appealed from the final judgment.  *See* 14 M.R.S. § 1901(1) (2013); M.R. App. P. 2.

## II. LEGAL ANALYSIS

### A.    The Admissibility of Glenn's Telephone Recordings

[¶16]  Cristie argues that Glenn violated the Interception of Wire and Oral Communications Act, 15 M.R.S. § 710, when he intentionally recorded, and disclosed to others, phone conversations between Cristie and the parties' minor daughter, thus intercepting "oral communications" without the consent of either party to the call, and that no exception to 15 M.R.S. § 712 applied to allow Glenn to consent vicariously on behalf of their daughter to record those conversations. She argues that Glenn's recordings were therefore inadmissible at trial pursuant to 15 M.R.S. § 713 and that the court erred when it denied her motion in limine, allowed the recordings to be played at trial, and relied on those recordings in the final divorce judgment, contempt order, and post-judgment orders.  Cristie does not dispute that she made ugly, disparaging comments about Glenn to their six-year-old daughter, or that she used the phone calls to manipulate and distress the child.

[¶17]  The issue presented requires us to determine whether, under the Act, a parent may vicariously consent on behalf of his minor child to record oral or wire communications between the child and another party.  We address the issue here in the context of this case, with phone conversations involving a six-year-old child,

10

when the parent recording the conversations had reason to believe that the conversations would include statements harmful to the child.

[¶18] We review the interpretation and application of a statute de novo, looking first to the plain language of the statute and rejecting any interpretation that would produce "absurd, illogical or inconsistent results."[3] *Sparks v. Sparks*, 2013 ME 41, ¶ 14, 65 A.3d 1223; *Young v. Young*, 2009 ME 54, ¶ 8, 973 A.2d 765. If the statutory language is ambiguous, meaning that it is "reasonably susceptible to multiple interpretations," or is silent on a particular point, we will "then consider other indicia of legislative intent including the purpose of the statute." *Sparks*, 2013 ME 41, ¶ 14, 65 A.3d 1223.

1.    Maine's Interception of Wire and Oral Communications Act

[¶19] Subject to certain exceptions not applicable here, a person commits a Class C crime if he or she "intentionally or knowingly intercepts, attempts to intercept or procures any other person to intercept or attempt to intercept, any wire or oral communication." 15 M.R.S. §§ 710(1), 712. A person "intercepts" a wire or oral communication when, as relevant here, the person hears or records "the

---

[3] After the court denied her motion in limine seeking to exclude Glenn's recordings on the grounds that he made them in violation of the Act, Cristie did not renew her objection during trial to the admissibility of the recordings, as is generally required to preserve the issue on appeal. *See* M.R. Evid. 103(c); *Anderson v. O'Rourke*, 2008 ME 42, ¶ 13, 942 A.2d 680; Field & Murray, *Maine Evidence* § 103.7 at 28–29 (6th ed. 2007). However, the context of the court's ruling on Cristie's motion in limine "clearly demonstrates" that the ruling was final, and we therefore address the merits of Cristie's argument. M.R. Evid. 103(c).

contents of any wire or oral communication through the use of any intercepting device"[4] unless the person (1) is the "sender or receiver of that communication," (2) is "within the range of normal unaided hearing . . . ,"[5] or (3) was "given prior authority by the sender or receiver." 15 M.R.S. § 709(4).[6] Subject to certain exceptions also not applicable here, the contents of a communication that has been intercepted in violation of the statute, within the meaning of the Act, are not admissible in court. 15 M.R.S. § 713.

[¶20] The court permitted Glenn to play at trial recordings that he had made of four different conversations that Cristie had with the child in November 2012. The parties do not dispute that Glenn recorded the conversations on an intercepting device and that he was not physically the sender or the receiver of those communications, even though he may have initially received the phone calls at

---

[4] "Contents" means "any information concerning the identity of the parties to such communication or the existence, contents, substance, purport or meaning of that communication." 15 M.R.S. § 709(2). An "[i]ntercepting device" means "any device or apparatus which can be used to intercept a wire or oral communication" other than (1) a telephone or telegraph instrument, equipment or facility or component thereof used by a communication common carrier in the ordinary course of its business; (2) extension telephones used by a subscriber to phone service; or (3) a hearing aid or similar device that corrects subnormal hearing to not better than normal hearing. 15 M.R.S. § 709(3).

[5] Cristie specifically challenges the admissibility of the four telephone recordings that Glenn made of her conversations with the child. To the extent that she suggests that Glenn was not permitted to testify to the contents of Cristie's communications with the child that he overheard, but did not record—communications that also supported the court's contempt order and the divorce judgment—we are unpersuaded. *See* 15 M.R.S. § 709(4).

[6] "Oral communications" and "[w]ire communication" are defined in 15 M.R.S. § 709(5) and (7). Given our holding, we do not address the parties' arguments as to whether Glenn's recorded conversations constituted oral, or wire, communications within the meaning of the statute.

12

issue.[7]  The dispute centers on whether the recordings nonetheless fall outside of the sweep of the Act, and were therefore admissible at trial, because Glenn had "prior authority" from the sender or receiver of the communication to record the communication.   15 M.R.S. § 709(4)(C); *see State v. Kehling*, 601 A.2d 620, 623-24 (Me. 1991).

2.    Vicarious Consent to Record

[¶21]  As pertinent here, a person who is not the sender or receiver of a communication may not intentionally or knowingly use an intercepting device to hear or record an oral or wire communication unless he or she has been given "prior authority by the sender or receiver."  15 M.R.S. §§ 709(4), 710(1).  Under Maine law, only the sender or receiver of the communication—not both—needs to give prior authority.  *See* 15 M.R.S. §§ 709(4)(C); *Kehling*, 601 A.2d at 624.

[¶22]   Cristie did not give prior authority to Glenn to record her conversations with the child.[8]  Additionally, neither party in this case argues that

---

[7]  Given that the child was only six years old, Glenn may have physically initially received the evening phone calls between Cristie and the child in November 2012, but there are no findings on this point, and regardless, the "contents" of the communications at issue here occurred in conversations between the child and Cristie to which Glenn was not a party.  *See* 15 M.R.S. § 709(2) (defining "[c]ontents" of communications for purposes of the Act).

[8]  Although Cristie testified at trial that she was concerned that Glenn might be listening to her conversations, that cannot be construed as Cristie's authorizing Glenn to intercept her conversations with the child, despite her recognition that Glenn might sometimes be able to overhear parts of the conversation unaided.  *Cf. State v. Kehling*, 601 A.2d 620, 624 (Me. 1991) (interpreting a prior version of the parallel federal law, 18 U.S.C.A. § 2511(2)(c), (d) (Supp. 1991), to conclude that a party may give "implied consent" to be recorded for purposes of Maine's law, and that such implied consent to a third party could be inferred from the surrounding circumstances).

the child explicitly authorized Glenn to record her communications in November 2012 or that, as a six-year-old child, she was legally capable of giving prior authority to Glenn to intercept the communications. However, citing cases from other jurisdictions, Glenn argues that, as the child's parent, he could and did vicariously consent on behalf of the child to record those calls.

[¶23] The statute does not define "given prior authority," 15 M.R.S. § 709(4)(C), and we cannot determine from the plain language of the statute whether the Legislature intended "given prior authority by the sender or receiver" to include a parent's decision to intercept a communication to or from his or her young child. We therefore consider other sources for guidance, including decisions from other jurisdictions that interpret the parallel federal law, 18 U.S.C.A. § 2511(2)(c), (d) (West, Westlaw through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14);[9] *see Kehling*, 601 A.2d at 624, and similar state

---

[9] Title 18 U.S.C.A. § 2511(2)(c), (d) (West, Westlaw through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14) states:

> **(c)** It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

> **(d)** It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

14

statutes that permit a third party to intercept a communication with the prior consent or authorization of one party to the communication.

[¶24]  The majority of jurisdictions that have interpreted laws similar to 15 M.R.S. §§ 709(4)(C) and 710(1) have held that a parent or guardian may vicariously consent on behalf of his or her minor child to record or otherwise intercept an oral or wire communication of which that child is the sender or receiver, and may do so without violating those laws, when the parent or guardian "has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent" on the minor child's behalf to the recording. *Pollock v. Pollock*, 154 F.3d 601, 610 (6th Cir. 1998) (interpreting the federal wiretapping statute); *State v. Spencer*, 737 N.W.2d 124, 128-34 (Iowa 2007) (interpreting the consent exception in Iowa law to include the vicarious consent doctrine); *State v. Whitner*, 732 S.E.2d 861, 863-65 (S.C. 2012) (interpreting the consent provision in South Carolina law and collecting cases); *accord Wagner v. Wagner*, 64 F. Supp. 2d 895, 896, 899-901 (D. Minn. 1999) (interpreting federal and state law); *Campbell v. Price*, 2 F. Supp. 2d 1186, 1189, 1191-92 (E.D. Ark. 1998) (interpreting federal law).[10]

---

[10]  *See also Silas v. Silas*, 680 So. 2d 368, 369-72 (Ala. Civ. App. 1996) (interpreting federal and state law to hold that the father could vicariously consent to the recordings because he had "a good faith basis that [was] objectively reasonable for believing that the minor child [was] being abused, threatened, or intimidated by the [mother]"); *Smith v. Smith*, 923 So. 2d 732, 737-41 (La. Ct. App. 2005) (construing Louisiana law to hold that the father could vicariously consent to record his child's conversations with the mother from a phone in the father's home); *cf. Commonwealth v. F.W.*, 986 N.E.2d 868, 873-77 (Mass.

[¶25]  Many of these jurisdictions have interpreted the consent provision of their anti-interception or wiretap laws to include vicarious consent in the context of child custody matters, holding that one parent could vicariously consent to the interception of the minor child's conversation with the other parent, almost always on the condition that the intercepting parent had a good faith, objectively reasonable belief that recording was necessary and in the child's best interests. *See Pollock*, 154 F.3d at 603-04, 610 (holding that one parent may vicariously consent, on behalf of a minor child in the parent's custody, to record the conversations between the child and the other parent in the context of a generally ongoing child custody dispute); *Campbell*, 2 F. Supp. 2d at 1187-91;[11] *see also Spencer*, 737 N.W.2d at 132 (collecting cases in which the vicarious consent doctrine has been applied in the context of custody battles); *supra* n.10 (discussing additional cases).

---

2013) (collecting cases and noting in dicta that "[w]ere the victim's father the person who made the recording at issue here, we would not hesitate to apply the vicarious consent doctrine" before holding that the victim's adult half-sister could vicariously consent); *Lawrence v. Lawrence*, 360 S.W.3d 416, 419-21 (Tenn. Ct. App. 2010) (construing Tennessee law to hold that, *as a matter of law*, the mother had the right to vicariously consent to recording her very young child's conversations with the father). *Contra State v. Williams*, 599 S.E.2d 624, 630 (W. Va. 2004) (declining to adopt the vicarious consent doctrine on the grounds that there was no federal or state statutory basis for doing so, but affirming the admissibility of the recording into evidence in a criminal matter on the theory that the fifteen-year-old minor participating in the conversation consented to recording it).

[11]  In *Campbell v. Price*, the court held that the father could vicariously consent to recording conversations between his daughter in his custody and her mother, without first obtaining consent from either the child or her mother, because he was acting in good faith and necessarily in his daughter's best interests to determine why his daughter would cry and become upset after speaking with her mother on the phone.  2 F. Supp. 2d 1186, 1187, 1189, 1191 (E.D. Ark. 1998).

16

[¶26] The law is "'firmly established'" that "parents have 'a fundamental liberty interest to direct the care, custody, and control of their children.'" *Pitts v. Moore*, 2014 ME 59, ¶ 11, --- A.3d --- (quoting *Davis v. Anderson*, 2008 ME 125, ¶ 18, 953 A.2d 1166 (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Rideout v. Riendeau*, 2000 ME 198, ¶ 12, 761 A.2d 291)). Parents also "have a duty to protect their children because children 'often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them.'" *Spencer*, 737 N.W.2d at 132 (quoting *Bellotti v. Baird*, 443 U.S. 622, 635 (1979)).

[¶27] Consistent with these decisions, we conclude that the Maine Legislature has not "intended to subject parents and guardians to criminal and civil penalties when, out of concern for the best interests of their minor child, they record that child's conversations." *Spencer*, 737 N.W.2d at 134; *see, e.g.*, Comm. Amend. A to L.D. 1925, No. S-456, Statement of Fact (109th Legis. 1980) (explaining that the Act was being amended to more expansively permit the receiver, as well as the sender, of a communication to give permission to record). We therefore hold that the consent provision of the Act, 15 M.R.S. § 709(4)(C), authorizes a parent or guardian to vicariously consent, that is, give "prior authority," on behalf of his or her minor child, to intercept the child's oral or wire communications with another party when the parent or guardian has a good faith,

objectively reasonable belief that it is necessary and in the child's best interest to do so.[12]

[¶28]   We caution, however, that today's decision is not an invitation for parents to routinely record or otherwise intercept their children's communications, whether in the course of divorce or custody disputes or otherwise.  *See Spencer*, 737 N.W.2d at 131.   In applying the vicarious consent doctrine included in 15 M.R.S. § 709(4)(C), there is no presumption that a parent intercepting the oral or wire communications between the minor child and another person is doing so in furtherance of the child's best interests.   In order to avoid the exclusionary application of the Act, the parent intercepting the communication between the child and another person assumes the burden to demonstrate that he or she did so with a good faith, objectively reasonable belief that it was necessary and in the child's best interest to authorize the recording on behalf of the child.

---

[12]  Cristie asserts that such a rule would violate her expectation or constitutional right of privacy, but we conclude that Glenn's recordings, made on a telephone in Glenn's home while the child was in his care, were made as a result of vicarious consent on behalf of one party to the calls, and therefore do not violate an expectation or right of privacy any more than if Glenn recorded his own phone conversations with Cristie without informing her, just as Cristie recorded conversations that she had with Glenn without informing him.   *See, e.g., State v. Whitner*, 732 S.E.2d 861, 870 n.12 (S.C. 2012) (Pleicones, J., concurring) ("[O]ne party to a protected communication has no expectation of privacy under the [state] Wiretap Act if the other party consents to recording or disclosure. Thus, the third party's interest in nondisclosure has no bearing on the question whether a parent may vicariously consent on behalf of his child.")

Cristie also argues without citation that Glenn fails to take into consideration her fundamental right to parent the child, but we assume that she does not argue that her right to parent the child, which in this context appears to mean a right to emotionally abuse the child free from Glenn's interference, trumps actions Glenn would take in the best interests of the child.

[¶29] Additionally, we do not address whether there is an age at which a child, albeit still a minor, may be deemed too old or mature for a parent to authorize or vicariously consent to the recording of the child's communications. *See Spencer*, 737 N.W.2d at 131 (concluding that the age of the child is a factor to consider when determining whether a parent or guardian can vicariously consent for the minor child, though noting that a child's ability to consent to recording is "not mutually exclusive" to the parent's ability to vicariously consent). In this case, the six-year-old child was too young by any measure to have provided or withheld prior authority to record the calls.

[¶30] Having concluded that vicarious consent to intercept a communication is available under the Act, we consider whether the record supports the court's determination that Glenn properly provided such vicarious consent in this case. The District Court found that Glenn recorded the child's conversations with Cristie after he determined that "it would be in the child's best interest to preserve [Cristie's] words by recording them." The court also found that Glenn recorded the conversations for "reasons set forth in [his] memorandum" opposing Cristie's motion in limine. In that memorandum, Glenn asserted that he recorded the conversations after overhearing Cristie, during phone calls with the child, make statements that were "emotionally abusive" and "harmful" to the child and

disparaging him and his parents and after witnessing the "dramatic and immediate negative effect" that Cristie's conduct had on the child.

[¶31] The court's findings are supported by competent record evidence, the most important of which is that Glenn had, with his unaided hearing, overheard Cristie emotionally abuse the child by speaking about Glenn and the young child's other caretakers in derogatory terms, before he took the step of recording the communications. We also note that Glenn, in furtherance of the child's best interests, properly did not prohibit Cristie from calling the child because Cristie was permitted by court order to call the child. Glenn appropriately sought an order finding Cristie in contempt of specific provisions of the August 2012 interim order and provided evidence to the court that would aid it in making primary residence and contact decisions.

[¶32] In short, because Glenn had a good faith, objectively reasonable basis for believing that recording the child's calls with Cristie was necessary and in the best interests of the child, and because the child herself was only six years old, Glenn could provide prior authority or consent on the child's behalf to recording the calls under the consent exception at 15 M.R.S. § 709(4)(C), and the court did not err in permitting Glenn's recordings to be played at trial.

B.      The GAL's Post-Judgment Duties

[¶33]   The court may appoint a GAL in certain contested proceedings, including divorce proceedings in which a minor child is involved, and "[a]t the time of the appointment, the court shall specify the guardian ad litem's length of appointment," as well as duties and fee arrangements.  19-A M.R.S. § 1507(1) (2013).

[¶34]   In this case, the order of appointment made the GAL's appointment effective "for the duration of the case."  The plain meaning of this order is that the GAL's appointment was effective until the case was concluded, meaning when the court entered a final judgment.  *See* M.R. Civ. P. 115(b); *MacPherson v. Estate of MacPherson*, 2007 ME 52, ¶¶ 5-9, 919 A.2d 1174 (stating that court action that fully decides and disposes of a matter is a final judgment when entered); *Bates v. Dep't of Behavioral & Dev'l. Servs.*, 2004 ME 154, ¶ 38, 863 A.2d 890 (stating that we review a trial court's interpretation of its own order de novo on questions of law and deferentially on discretionary issues).

[¶35]   This interpretation of the plain language of the court's appointment order is consistent with the GAL appointment requirements of 19-A M.R.S. § 1507(3) (2013).  Although section 1507(3)(B)(10) authorizes the court to assign a GAL certain specified duties as well as "[o]ther duties that the court determines necessary," nothing in 19-A M.R.S. § 1507 (2013), providing for the appointment

of a GAL "[i]n contested proceedings," suggests that a court may assign duties to a GAL that extend beyond the entry of a final judgment. *See, e.g.*, 19-A M.R.S. § 1507(5) (stating that the GAL's *final* written report must be provided "reasonably in advance of the hearing").

[¶36] In this case, the court's final divorce judgment ordered Cristie to give approval authority over her choice of counselor to the GAL, which authorized the GAL to continue working with this family—and presumably submit invoices requiring payment—after the entry of the final divorce judgment. This grant of post-judgment authority is neither contemplated in the GAL's appointment order nor authorized by statute. Once an adversarial relationship had developed between the mother and the GAL, it would generally be contrary to therapeutic goals to allow that GAL to choose a counselor for the mother. Accordingly, we vacate the portion of the final divorce judgment that instructs the GAL to approve Cristie's choice of a post-judgment counselor, and we remand for the court to enter any further order regarding counseling.

The entry is:

> Judgment vacated to the extent that it ordered Cristie to have the GAL approve her counselor post-judgment. Judgment affirmed in all other respects.

22

**On the briefs and at oral argument:**

Kelly E. Mellenthin, Esq., Lincolnville, for appellant Cristie J. Griffin

Philip S. Cohen, Esq., Cohen & Cohen, Waldoboro, for appellee Glenn A. Griffin

Rockland District Court docket number FM-2011-300
FOR CLERK REFERENCE ONLY