MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2013 ME 41
Docket:        Cum-12-73
Argued:        December 13, 2012
Decided:       April 4, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
               JABAR, JJ.

## JUDY SPARKS

v.

## BRANT SPARKS

JABAR, J.

[¶1]  Judy Sparks appeals from a judgment entered in the District Court (Portland, *Powers, J.*) granting a protection from abuse order that she requested on behalf of her fifteen-year-old stepson against Brant, his biological father, but denying her temporary parental rights and responsibilities for her stepson.  On appeal, Judy contends that, pursuant to 19-A M.R.S. § 4005(1) (2012), she was a "person responsible" for her stepson and therefore the court had the authority to award her temporary parental rights to her stepson. *See* 19-A M.R.S. § 4007(1)(G) (2012).  Because we conclude that the protection from abuse statute permits the court to award temporary parental rights to a stepparent, and that the award would not have violated the father's rights pursuant to the Due Process Clause of the

2

Fourteenth Amendment, we vacate the portion of the trial court's judgment denying temporary parental rights and responsibilities to the stepmother.

## I. BACKGROUND

[¶2] Judy and Brant Sparks married in 2009 and separated about a year and a half later. Brant has a biological son—Judy's stepson—who was born in 1996. After Judy and Brant separated, Brant moved out, but Brant's son continued to live with Judy and her three biological children. In the year after the family dissolved, Brant saw his son only a few times. Brant's son considers Judy to be his "mom."[1]

[¶3] On December 21, 2011, Judy filed a protection from abuse complaint against Brant on behalf of herself, two of her biological children who were under the age of eighteen at the time (Brant's stepchildren), and Brant's son. Judy also petitioned for full guardianship of Brant's son in the Probate Court. Brant agreed to an order of protection for Judy and two of her biological children but contested the need for a protective order on behalf of his son. At the protection from abuse hearing, Brant admitted that he had confessed to his son that he had assaulted the son's biological mother and molested the son's biological sister, who no longer resided with Brant. Brant's son testified that Brant had struck him in the face,

---

[1] The child's biological mother has not exercised any parental rights over him for several years. She and Brant were never married, and there is no order establishing their respective rights and responsibilities concerning Brant's son. The biological mother agreed to Judy's attempt to obtain temporary parental rights in the District Court and did not object to Judy's petition for guardianship in the Probate Court.

grabbed him by the back of the head, and had punched walls and other objects around him. Brant's son also testified that he saw his father slapping Judy, pinning her and his stepbrothers to the wall by their necks, and that Brant had told him that "he had actually beaten [the son's biological mother] up, and that if he stayed with her he would have killed her."

[¶4]  Judy requested temporary parental rights and responsibilities for Brant's son at the protection from abuse hearing, pending the outcome of the guardianship proceeding. She testified that she had sought counseling services for Brant's son after Brant moved out, but the service providers required Brant's permission for his son to attend the sessions. Brant refused to allow his son to attend the counseling sessions unless Brant was present with him. Judy informed the court that she needed temporary parental rights because she was the primary caregiver for Brant's son, and she needed to be able to make decisions on his behalf concerning service providers, including counselors and the local public school.

[¶5]  On January 27, 2012, the court awarded protection to all four petitioners—Judy, two of her sons, and Brant's son. The court found that Brant had abused his son and prohibited Brant from having any contact with him until the order expires in 2014. However, the court denied Judy's request for temporary parental rights and responsibilities for Brant's son, effectively leaving the boy

4

without a legal caretaker. On February 10, 2012, the Cumberland County Probate Court awarded Judy full guardianship of Brant's son in a separate, unopposed hearing. On February 17, 2012, Judy filed a timely notice of appeal of the District Court's decision denying her request for temporary parental rights and responsibilities.

## II. DISCUSSION

[¶6] Judy contends that the court erred by denying her request for temporary parental rights and responsibilities for Brant's son in the protection from abuse proceeding. The protection from abuse statute gives Judy standing to file a complaint on behalf of her stepson because she is a "person responsible for the child." *See* 19-A M.R.S. § 4005(1); 22 M.R.S. § 4002(9) (2012) (defining "[p]erson responsible for the child"). Judy argues that because the protection from abuse statute lists the award of temporary parental rights to minor children among the various forms of relief, the District Court also had the authority to award her temporary parental rights to Brant's son, even though she is not his legal parent. *See* 19-A M.R.S. § 4007(1)(G).

[¶7] Brant responds that this issue is moot because the Probate Court appointed Judy as full guardian of Brant's son on February 10, 2012. He argues that even if the issue is not moot, the protection from abuse statute unambiguously limits awards of temporary parental rights to the child's legal parents. Further, he

contends that awarding temporary rights and responsibilities for his child to a nonparent infringes upon his rights pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

[¶8]  We turn first to the threshold issue, (A) whether this appeal is moot and should be dismissed.  If the dispute survives the mootness analysis, we then consider (B) whether the statute permits an award of temporary parental rights and responsibilities for children to nonparents, and, if so, (C) whether that award violates the due process protections of the Federal and Maine Constitutions.

A.    Mootness

[¶9]  Because Judy received the same rights by obtaining a guardianship of Brant's son as those that she would have received if the court had awarded her temporary parental rights and responsibilities, Brant argues that her appeal is moot. *See* 18-A M.R.S. § 5-209 (2012) ("A guardian of a minor has the powers and responsibilities of a parent . . . .").  We will decline to hear a case that has "lost [its] controversial vitality" and is moot because "a decision by this court would not provide an appellant any real or effective relief."  *Int'l Paper Co. v. United Paperworkers Int'l Union*, 551 A.2d 1356, 1360, 1361 (Me. 1988) (quotation marks omitted).  "In the family law context, a case is moot when an appellate decision cannot offer a [party] any more relief than what th[at] [party] received in an earlier proceeding."  *Young v. Young*, 2002 ME 167, ¶ 7, 810 A.2d 418

6

(quotation marks omitted). We agree with Judy and Brant that our decision in this appeal will provide no additional relief because the Probate Court appointed Judy as legal guardian of Brant's son, granting her the same rights that she sought in the protection from abuse proceeding. *See* 18-A M.R.S. § 5-209.

[¶10] Nevertheless, we will hear an appeal, although technically moot, in three circumstances:

> (1) sufficient collateral consequences will flow from a determination of the questions presented, (2) the question, although moot in the immediate context, is of great public interest and should be addressed for future guidance of the bar and public, or (3) the issue may be repeatedly presented to the trial court, yet escape review at the appellate level because of its fleeting or determinate nature.

*Young*, 2002 ME 167, ¶ 8, 810 A.2d 418 (quotation marks omitted). In *Young v. Young*, we addressed a similar question of mootness involving an award of temporary parental rights and responsibilities to a stepparent in a protection from abuse hearing. *Id.* ¶¶ 2-5. We concluded in *Young* that the question presented did not meet the first and third exceptions, but that the issue could fall within the second, public interest, exception to the mootness doctrine. *Id.* ¶¶ 8-9.

[¶11] In deciding whether an issue meets the public interest exception, "we consider the following criteria: whether the question is public or private, how much court officials need an 'authoritative determination' for future rulings, and how likely the question is to recur in the future." *Id.* ¶ 9 (quoting *King Res. Co. v.*

*Envtl. Improvement Comm'n*, 270 A.2d 863, 870 (Me. 1970)). In *Young*, we concluded that the issue of whether to award temporary parental rights to nonparents in protection from abuse proceedings was public in nature because it involved the State's interest in protecting victims of abuse and the parents' fundamental liberty interest in raising their children free from state interference. *Id.* Further, given the "significant number of blended families with children in Maine," the issue was likely to recur in the future. *Id.* Although we recognized that an "authoritative determination on the question presented could be of great benefit," we concluded that the facts as presented did not allow us to render that determination. *Id.* ¶ 10. Our analysis was limited in *Young* because the order of protection was awarded only on behalf of an abused parent, not "on behalf of a minor child who was found to have been abused," and thus we were unable "to analyze all relevant facets of the protection from abuse statute." *Id.*

[¶12] In contrast, here the court found that Brant had abused his son and issued a judgment granting protection and restricting contact between Brant and his son. Given the critical importance of the State's role in protecting victims of domestic violence, particularly child victims,[2] and the consistently large number of

---

[2] We note that the State's interest in preventing domestic violence against children stems in part from "[t]he impact of family violence [on children] demonstrated in several spheres including short-term physical, developmental, and psychiatric effects as well as long-term effects on the intergenerational transmission of violence, criminality, psychiatric disorders and other psychosocial complications." Javad H. Kashani et al., *Family Violence: Impact on Children*, 31 J. Am. Acad. of Child & Adolescent

8

protection from abuse complaints filed in Maine every year,[3] there is no reason to deviate from our conclusion in *Young* that this issue would benefit from an authoritative determination. Because the complaint was filed on behalf of an abused child and the court found that the parent committed the alleged abuse, we may fully consider "whether and under what circumstances section 4007(1)(G) of the Protection From Abuse statute permits an award of parental rights and responsibilities to a stepparent." *Id.* ¶ 11. We therefore conclude that the issue falls within the public interest exception to the mootness doctrine.

B.     Temporary Parental Rights and Responsibilities of Nonparents in Protection from Abuse Proceedings

[¶13]     The protection from abuse statute gives nonparents who are "responsible for the child," meaning any "person with responsibility for the child's health or welfare," the ability to "seek relief by filing a petition alleging that abuse." 19-A M.R.S. § 4005(1); 22 M.R.S. § 4002(9) (defining "person responsible for the child"). One form of relief, pursuant to title 19-A section 4007(1)(G), is an award of temporary parental rights and responsibilities:

---

Psychiatry 181, 183 (1992); *see also* Alan J. Tomkins et al., *The Plight of Children Who Witness Woman Battering: Psychological Knowledge and Policy Implications*, 18 Law & Psychol. Rev. 137, 139 (1994) ("[C]hildren who grow up in violent homes experience damaging psychological effects." (quotation marks omitted)).

  [3]  The Administrative Office of the Courts reported that 6,250 protection from abuse complaints were filed in Maine in fiscal year 2012, with a five-year average of 6,223. Me. Admin. Office of the Courts, *Maine State Court Caseload 5 Year Trend*, Me. Judicial Branch web site (Oct. 24, 2012) (follow "Reports & Publications" hyperlink; then follow "Statistics" hyperlink; then follow "All Court Filings" hyperlink) (visited April 1, 2013).

The court, after a hearing and upon finding that the defendant has committed the alleged abuse . . . may grant a protective order . . . . Relief granted under this section may include:

. . . .

G. Either awarding some or all temporary parental rights and responsibilities with regard to minor children . . . in accordance with the best interest of the child pursuant to section 1653, subsections 3 to 6-B.

Judy argues that section 4007(1)(G), when read together with 19-A M.R.S. § 4005(1), permits nonparents who are "persons responsible for the child" to obtain temporary parental rights and responsibilities if they receive a protection from abuse order on behalf of that child against the child's parent. Brant argues, however, that the statute is unambiguous and limits parental rights only to the child's legal parents.

[¶14] "We review de novo a challenge to the court's interpretation of the protection from abuse statute." *L'Heureux v. Michaud*, 2007 ME 149, ¶ 5, 938 A.2d 801. Our review is guided by a few well-established principles: "In interpreting the meaning of a statute, we look first to its plain language," *id.* ¶ 7; "[a]ny interpretation that produces absurd, illogical or inconsistent results must be rejected," *In re Adoption of Tobias D.*, 2012 ME 45, ¶ 15, 40 A.3d 990; and we consider "[s]tatutory language . . . ambiguous if it is reasonably susceptible to multiple interpretations," *L'Heureux*, 2007 ME 149, ¶ 7, 938 A.2d 801. "If the

statutory language is silent or ambiguous, we then consider other indicia of legislative intent" including the purpose of the statute. *Dyer v. Dyer*, 2010 ME 105, ¶¶ 7, 9-10, 5 A.3d 1049.

[¶15]  The protection from abuse statute provides that the District Court has the authority to grant relief, including "temporary parental rights and responsibilities . . . in accordance with the best interest of the child pursuant to section 1653, subsections 3 to 6-B."  19-A M.R.S. § 4007(1)(G).  Because section 4005(1) grants "persons responsible for the child" the ability "to seek relief" by filing a petition for protection from abuse on behalf of that child, we conclude that the plain language of the statute allows nonparents to seek temporary parental rights and responsibilities for a child, if they are persons responsible for the child as defined in 22 M.R.S. § 4002(9).

[¶16]  Moreover, allowing persons responsible for the child to seek temporary parental rights is consistent with the statute's purposes:

> The court shall liberally construe and apply this chapter to promote the following underlying purposes:
>
>  . . . .
>
> **2. Protection**.  To allow family and household members who are victims of domestic abuse to obtain expeditious and effective protection against further abuse so that the lives of the nonabusing family or household members are as secure and uninterrupted as possible;

**3. Enforcement**. To provide protection by promptly entering and diligently enforcing court orders that prohibit abuse and, when necessary, by *reducing the abuser's access to the victim and addressing related issues of parental rights and responsibilities* and economic support *so that victims are not trapped in abusive situations* by fear of retaliation, loss of a child or financial dependence;

**4. Prevention**. To *expand the power of the justice system to respond effectively to situations of domestic abuse*, to clarify the responsibilities and support the efforts of law enforcement officers, prosecutors and judicial officers *to provide immediate, effective assistance and protection for victims of abuse* and to recognize the crucial role of law enforcement officers in preventing further incidents of abuse and in assisting the victims of abuse;

19-A M.R.S. § 4001(2)-(4) (2012) (emphasis added). The Legislature could not have intended that the abusive parent could be restricted from contact with the abused child and yet would retain sole parental rights and responsibilities, and that a stepparent or other party who has been responsible for that child should not be able to obtain an order of protection granting him or her temporary parental rights. *See In re Adoption of Tobias D.*, 2012 ME 45, ¶ 15, 40 A.3d 990 (explaining that statutory interpretations that result in "absurd, illogical or inconsistent results must be rejected" (quotation marks omitted)).

[¶17] To read the statute as Brant recommends, limiting temporary parental rights and responsibilities to biological or legal parents, would fail to provide the type of immediate relief to the victims of abuse that is contemplated by the Legislature's express purpose: "that the lives of the nonabusing family or

household members are as secure and uninterrupted as possible." 19-A M.R.S. § 4001(2). An award of temporary parental rights and responsibilities to nonparents who are persons responsible for the child when there is an order of protection on behalf of the child against the child's legal parent also furthers the statute's purposes of protection, enforcement, and prevention. *See* 19-A M.R.S. § 4001(2)-(4). Therefore, we conclude that the statute allows temporary parental rights and responsibilities to apply to persons responsible for the child, even if they are not the child's legal parents.

## C. Constitutional Challenges

[¶18] Concluding that the protection from abuse statute permits an award of temporary parental rights and responsibilities to nonparents responsible for an abused child, we review the statute to determine whether it infringes on Brant's constitutional interests protected by the Due Process Clauses of the United States and Maine Constitutions. *See* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A. Brant argues that awarding temporary parental rights and responsibilities concerning his son to Judy would violate his constitutionally protected interests. Those interests include Brant's fundamental liberty interest in the custody and control of his child, protected by the substantive component of the Due Process Clause of the Fourteenth Amendment, *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000), and his interest in fair proceedings pursuant to the procedural component

of the Due Process Clause, *see Guardianship of Hughes*, 1998 ME 186, ¶ 9, 715 A.2d 919.

[¶19] "We review questions of law, including alleged constitutional violations . . . de novo." *In re Robert S.*, 2009 ME 18, ¶ 12, 966 A.2d 894. In reviewing statutes to determine whether they meet constitutional requirements, we note that "[a] statute is presumed to be constitutional and the person challenging the constitutionality has the burden of establishing its infirmity." *Rideout v. Riendeau*, 2000 ME 198, ¶ 14, 761 A.2d 291 (quotation marks omitted). "[I]f we can reasonably interpret a statute as satisfying . . . constitutional requirements, we must read it in such a way, notwithstanding other possible unconstitutional interpretations of the same statute." *Id.*

1.    Substantive Due Process

[¶20] "[P]ursuant to the substantive due process component of the Fourteenth Amendment, parents have a fundamental liberty interest in making decisions concerning the care, custody, and control of their children." *Conlogue v. Conlogue*, 2006 ME 12, ¶ 12, 890 A.2d 691. A court order that assigns even temporary rights to a nonparent interferes with the parent's fundamental liberty interest. *Cf. Rideout*, 2000 ME 198, ¶ 21, 761 A.2d 291 ("The power of the court to adjudicate . . . disputes [involving nonparent visitation rights] and to enforce its own orders constitutes state involvement in a way that clearly implicates parents'

fundamental liberty interests in the care and custody of their children."). The application of the statute to grant parental rights to a nonparent therefore triggers strict scrutiny, and we will uphold the statute as applied only if it is narrowly tailored to serve a compelling state interest. *Id.* ¶¶ 19-20.

(i)     Compelling State Interest

[¶21]   Section 4007(1)(G) of title 19-A provides that a court may award temporary parental rights and responsibilities as a form of relief in protection from abuse proceedings "under such conditions that the court finds appropriate as determined in accordance with the best interest of the child pursuant to section 1653, subsections 3 to 6-B." At the outset, we note that the best interests of the child standard was developed to allocate parental rights between two parents. As we explained in *Rideout v. Riendeau*, "the best interests of the child standard, standing alone, is an insufficient standard for determining when the State may intervene in the decision making of competent parents." 2000 ME 198, ¶ 12, 761 A.2d 291. However, the State does have a compelling interest in protecting a child from harm or a threat of harm. *See id.* ¶ 23 ("[T]he threat of harm to a child is certainly sufficient to provide the State with a compelling interest."); *see also In re Melissa T.*, 2002 ME 31, ¶ 4, 791 A.2d 98 ("[T]he state has a compelling interest to seek to protect . . . children from jeopardy."). In *Rideout*, the plurality described the "threat of harm" as "consisting of a threat to physical safety or

imminent danger," and stated that protecting children from this threat constitutes a compelling state interest. 2000 ME 198, ¶ 23, 761 A.2d 291.

[¶22] The protection from abuse statute details the precise conduct required by the defendant for the court to find "[a]buse," including causing injury, threatening injury, stalking, following, or restricting another person's movements. 19-A M.R.S. § 4002(1) (2012). Here, the court found that Brant had abused his son. Brant's conduct falls within the ambit of "harm" or "threat of harm" that we contemplated in *Rideout* as constituting a compelling state interest, justifying state interference with parents' control over the care and custody of their children. 2000 ME 198, ¶ 23, 761 A.2d 291. Thus, if the court finds that a parent has abused his or her child, the state has a compelling interest in protecting the abused child from harm or a threat of harm and may award temporary parental rights and responsibilities to a nonparent who is responsible for the child if no other parent is willing or able to exercise those rights.

(ii)     Narrowly Tailored Means

[¶23] To satisfy strict scrutiny, the statute must also be narrowly tailored to meet the compelling state interest. *See, e.g.*, *Rideout*, 2000 ME 198, ¶ 19, 761 A.2d 291 (citing *Reno v. Flores*, 507 U.S. 292, 301-02 (1993)). As we stated in *Rideout*, a statute is narrowly tailored to meet the compelling state interest where it protects against an unwarranted interference with parents' fundamental

16

liberty interest in the care and custody of their children. *Id.* ¶¶ 29-33. In *Rideout,* the grandparent's visitation statute provided extensive layers of protection against unwarranted intrusion on parents' fundamental rights, including (1) requiring the grandparent to demonstrate that he or she has standing through "the death of one of the parents[,] a sufficient existing relationship with their grandchildren[,] or . . . a sufficient effort to sustain a relationship"; (2) requiring the court to consider the objections of the parents; and (3) mandating that the visits could not "significantly interfere with the parent-child relationship," even if the first two requirements have been satisfied. *Id.* ¶¶ 16, 29-32. Given these safeguards, we concluded that the visitation statute was narrowly tailored to meet the compelling state interest in providing contact between grandparents with a "sufficient existing relationship" with their grandchildren. *Id.* ¶ 26, 33 (quotation marks omitted).

[¶24] The protection from abuse statute is also narrowly tailored to serve the State's compelling interest because it protects against unwarranted interference with the parents' fundamental rights. First, only a nonparent who is "a person responsible for the child," meaning "a person with responsibility for a child's health or welfare," may bring a protection from abuse complaint on behalf of the child. 19-A M.R.S. § 4005(1); 22 M.R.S. § 4002(9). We have indicated that a person responsible for the child includes someone who is able to "meet the child's day-to-day needs and . . . ensure that the child is safe and healthy." *In re*

*Baby Duncan*, 2009 ME 85, ¶ 13, 976 A.2d 935, *overruled on other grounds by In re Adoption of Tobias D.*, 2012 ME 45, ¶¶ 20-21, 40 A.3d 990.  The standing requirement prevents nonmeritorious suits by third parties, including noncustodial grandparents, and forestalls any concern that third parties having little preexisting relationship with the child would interfere with the parents' due process rights. *See Rideout*, 2000 ME 198, ¶¶ 26, 30, 761 A.2d 291; *cf. J.M.R. v. S.T.R.*, 15 P.3d 253, 256 (Alaska 2001) (denying temporary custody for nonparents in a domestic violence proceeding because the Alaska statute permitted any victim of abuse within the abuser's household to seek custody of a child, which could include "a parent's temporary roommate").

[¶25]  Second, an award of temporary parental rights can occur only after the court has found that there has been abuse, that the defendant-parent represents a credible threat to the physical safety of the child, or the parties voluntarily request a consent agreement to bring about a cessation of abuse that also includes an order granting parental rights and responsibilities to the nonparent.  *See* 19-A M.R.S. § 4007(1) (2012).

[¶26]  Third, the parental rights awarded in protection from abuse proceedings are intended to be temporary.  *See id.* § 4007(1)(G).  Fourth, the statute expressly sets out that "[t]he court's award of parental rights and responsibilities . . . is not binding in any separate action involving an award of

parental rights and responsibilities . . . or in a similar action brought in another jurisdiction . . . ." *Id.* Because the Legislature has explicitly provided that the parental rights awards in protection from abuse proceedings are temporary and nonbinding in later proceedings, these awards are not intended to function as a replacement for guardianship or termination of parental rights processes. *See* 18-A M.R.S. § 5-204 (2012) (providing for the appointment of a guardian for a minor); 19-A M.R.S. § 1653(5-A) (2012) (allowing a court to consider, but not use as precedent, "the fact that a protective order was issued" when awarding parental rights and responsibilities); 19-A M.R.S. § 4007(1)(G). Instead, these temporary awards of parental rights are intended to operate only as long as it is necessary to bring a separate proceeding seeking guardianship or termination of parental rights.[4]

[¶27] Here, the trial court found that Brant had abused his son and others in the household, and that he had confessed to his son the extensive abuse to the child's mother and sister. Apart from the abusive father who was restricted from having contact with his son for two years, no other parent was willing or able to exercise parental rights. Thus, Judy may receive temporary parental rights to Brant's son, and the award of temporary parental rights is narrowly tailored to

---

[4] In addition, a parent who is subject to a temporary, ex parte order of protection that awards a nonparent parental rights over his child could seek immediate relief from that order by filing a motion to dissolve or modify that order with two days' notice to the plaintiff, or shorter notice if the court so orders pursuant to 19-A M.R.S. § 4006(7) (2012).

meet the compelling state interest of protecting Brant's son from a threat of further harm.

2.      Procedural Due Process

[¶28]  Brant argues that he was not on notice that the protection from abuse proceeding could result in Judy receiving temporary parental rights to his son, and therefore an award of temporary parental rights to Judy would have violated his procedural due process rights.  "In a procedural due process challenge, we must first determine whether the governmental action has resulted in a deprivation of life, liberty, or property."  *Guardianship of Hughes*, 1998 ME 186, ¶ 9, 715 A.2d 919.  "If a deprivation has occurred, we are next required to determine what process is due the individual under the Fourteenth Amendment."  *Id*.  When the legal parents' rights to the custody and control of their child may be affected, procedural due process pursuant to the Fourteenth Amendment requires that the parent receive notice and be given the opportunity for a hearing.[5]  *See In re Destiny T.*, 2009 ME 26, ¶ 15, 965 A.2d 872 ("With constitutionally protected parental rights at stake, notice and the opportunity to be heard are essential to due process.").

---

[5]  Although we note that the assignment of temporary parental rights may also implicate the due process rights of a parent who is not a party to the protection from abuse proceeding, we need not address it in this case because the biological mother signed an affidavit waiving notice to the pending guardianship proceeding and consenting to the placement of all parental rights and responsibilities with Judy.

[¶29]   Because the father was actually present at and participated in the hearing and was able to present evidence concerning a possible award of parental rights to Judy, he received ample due process.  *See Kirkpatrick v. City of Bangor,* 1999 ME 73, ¶ 15, 728 A.2d 1268 ("The fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right which the particular pertinent constitutional provision purports to protect." (quotation marks omitted)).   Therefore, granting temporary parental rights concerning Brant's son to Judy would not violate Brant's procedural due process rights.

## III.  CONCLUSION

[¶30]  Because the award of temporary parental rights and responsibilities to a nonparent responsible for the child is consistent with the language and express purposes in the protection from abuse statute and does not violate the parent's constitutionally protected interests, we vacate the portion of the trial court's judgment denying those rights to the stepmother.

The entry is:

> The portion of the judgment denying temporary
> parental rights and responsibilities is vacated.  The
> remainder of the court's order of protection is
> affirmed.

**On the briefs:**

Courtney I. Beer, Esq., Pine Tree Legal Assistance, Inc., Portland, for appellant Judy Sparks

Allison M. Ouellet, Stud. Atty., and Christopher Northrop, Esq., Cumberland Legal Aid Clinic, Portland, for appellee Brant Sparks

**At oral argument:**

Courtney I. Beer, Esq., for appellant Judy Sparks

Anedra Gregori, Stud. Atty., Cumberland Legal Aid Clinic, Portland, for appellee Brant Sparks

Portland District Court docket number PA-2011-1584
FOR CLERK REFERENCE ONLY