MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 15
Docket:        Cum-13-299
Submitted
 On Briefs:    December 13, 2013
Decided:       February 11, 2014

Panel:         SAUFLEY, C.J., and LEVY, <u>MEAD</u>, GORMAN, and JABAR, JJ.

## IN RE M.M.

MEAD, J.

[¶1] Stephen Pickering, Robert Gilman, and Newbold Noyes (Petitioners) appeal from a judgment of the District Court (Portland, *Goranites, J.*) dismissing their petition for a child protection order, filed pursuant to 22 M.R.S. § 4032(1)(C) (2013),[1] concerning M.M. The Petitioners contend that the court erred in finding that (1) two of the grounds raised in the petition were barred by the doctrine of res judicata, (2) the remaining three grounds failed to state a claim upon which relief could be granted pursuant to M.R. Civ. P. 12(b)(6), and (3) the Petitioners lacked standing to invoke the court's jurisdiction. We conclude that the Petitioners had standing to bring the petition and otherwise affirm the judgment.

### I. BACKGROUND

[¶2] This case is a continuation of a highly contentious contest for custody of M.M. that has been litigated in various forms in several forums since M.M.'s

---

[1] The statute provides that a child protection petition "may be brought by: . . . [t]hree or more persons." 22 M.R.S. § 4032(1)(C) (2013).

parents' divorce action began in 2008. In the divorce judgment (*Moskowitz, J.*) the parents were awarded shared parental rights and responsibilities, and primary physical residence of M.M. was awarded to the mother. In 2011, the court granted the father's motion to modify the judgment by awarding him primary physical residence of M.M., with "frequent and plentiful" visitation by the mother. In 2012, the court again modified the judgment by awarding sole parental rights and responsibilities to the father, and barring the mother from having any contact with M.M. until the mother received effective mental health treatment.

[¶3] The case at bar began in April 2013, when the Petitioners filed their petition for a child protection order seeking to have the District Court find, pursuant to 22 M.R.S. § 4035 (2013), that M.M. required protection because of circumstances of jeopardy created by the father. The petition further requested a preliminary protection order pursuant to 22 M.R.S. § 4034 (2013) granting custody of M.M. to the mother. The request for a preliminary protection order was denied.

[¶4] At a prehearing case management conference, the court ordered the Petitioners to clarify the allegations made in the petition. As clarified, the petition alleged that M.M. was in jeopardy as evidenced by

(1) the father's July 13, 2010, assault on M.M. with a cardboard box;

(2) the father's March 25, 2011, assault on M.M. by hitting her in the head with a metal pan;

(3) the father's continuous denial of the mother's visitation with M.M.;

(4) the father's verbal, and by inference physical, abuse of his second wife; and

(5) "inconsistent and contradictory actions by DHHS" in investigating indications that the father had abused M.M.

[¶5] The Department of Health and Human Services and the father separately moved to dismiss the petition on the grounds that some of the claims it asserted were barred by the doctrine of res judicata and that others failed to state a claim upon which relief could be granted; the father also contended that the Petitioners lacked standing. In June 2013, the court (*Goranites, J.*) heard and granted the motions to dismiss. The Petitioners appealed. In reviewing the judgment, we treat the petition's material allegations as admitted. *See Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 5, 983 A.2d 400.

## II. DISCUSSION

A.    Standing

[¶6] The petition stated that the Petitioners were either "intimately involved" with the dispute over M.M.'s custody or had been "involved since the beginning" of the case. Petitioner Stephen Pickering is the mother's investigator. Otherwise, the Petitioners represented to the court that they are "three private citizens joined together . . . acting as a corporation" with "no natural or legal

relationship to the child." The court found that 22 M.R.S. § 4032(1)(C) is unconstitutional as applied in this case because granting the Petitioners standing unduly interferes with the father's fundamental due process right to parent M.M. free from State interference.[2] It dismissed the petition on that basis, among others.

[¶7] Whether the Petitioners had standing is a threshold issue because "[s]tanding relates to the court's subject matter jurisdiction." *Cloutier v. Turner*, 2012 ME 4, ¶ 8, 34 A.3d 1146 (quotation marks omitted). Accordingly, the question of the Petitioners' standing, once raised by the father in his motion to dismiss, should have been determined before the court reached any other issue. Upon finding that the Petitioners lacked standing, the court was required to dismiss the petition without proceeding further because it had no power to adjudicate the case. *See Ewing v. Me. Dist. Court*, 2009 ME 16, ¶ 12, 964 A.2d 644 (holding that, in a case where a complaint was dismissed pursuant to M.R. Civ. P. 12(b)(6), "the initial inquiry by the court should have been whether it had subject matter jurisdiction . . . and therefore had the authority to decide the case before it").

[¶8] We reach the merits of the motions to dismiss because we conclude that the Petitioners did have standing to bring the petition. In a line of cases decided since 2000, *see, e.g., Rideout v. Riendeau*, 2000 ME 198, 761 A.2d 291,

---

[2] The father agrees that the court correctly decided the standing issue; the Department takes no position on it.

we have examined the question of when a person has standing to invoke the power of a court to interfere with a parent's "fundamental liberty interest in the custody and control of his child," an interest that is protected by the Due Process Clause of the Fourteenth Amendment. *Sparks v. Sparks*, 2013 ME 41, ¶¶ 18, 20, 65 A.3d 1223. Although section 4032(1)(C) is presumed to be constitutional, *id.* ¶ 19, because a fundamental liberty interest is at stake, the statute cannot survive constitutionally required strict-scrutiny review unless "it is narrowly tailored to serve a compelling state interest." *Id.* ¶ 20.

[¶9]  In *Sparks*, we recognized that "the State does have a compelling interest in protecting a child from harm or a threat of harm." *Id.* ¶ 21; *see* 22 M.R.S. § 4002(6)(A) (2013) (defining "jeopardy" as "[s]erious harm or threat of serious harm"). We also noted "the critical importance of the State's role in protecting victims of domestic violence, particularly child victims," and "the State's interest in preventing domestic violence against children." *Sparks*, 2013 ME 41, ¶ 12 & n.2, 65 A.3d 1223. Because section 4032(1)(C) serves a compelling state interest in protecting children from jeopardy, the question becomes whether the statute is sufficiently narrow in vindicating that important interest to survive strict scrutiny analysis.

[¶10]  When the remedy sought is court-enforced contact with a child, "standing requirement[s] prevent[] nonmeritorious suits by third parties . . . and

forestall[] any concern that third parties having little preexisting relationship with the child would interfere with the parents' due process rights." *Id.* ¶ 24. Thus, if the Petitioners were bringing an action seeking contact with M.M., then their admitted lack of any familial or legal relationship would undoubtedly lead to a finding that they lacked standing. Here, however, the Petitioners did not seek court-ordered contact with M.M.; rather, their petition sought to have the court protect M.M. from alleged jeopardy. We have said that "regardless of the party bringing the petition, the focus of the District Court in a child protection case is to determine whether a child requires protection in the first instance, not to determine who should have custody." *In re Higera N.*, 2010 ME 77, ¶ 18 n.7, 2 A.3d 265.

[¶11] Section 4032, which allows a child protection petition to be brought by the Department, a law enforcement officer, or "three or more persons," 22 M.R.S. § 4032(1)(B)-(C) (2013), contemplates that there may be situations where an officer, neighbors, friends, teachers, or others believe that a child is in jeopardy when the Department, for whatever reason, does not act. The Legislature erred on the side of caution on the question of when to allow a court to intervene in a family to determine whether a child requires protection, evidently deciding that requiring three private citizens to agree to bring a petition was an adequate safeguard against a vindictive individual trying to harass a custodial parent.

[¶12]    We conclude that the Legislature acted within constitutional boundaries by narrowly tailoring section 4032(1)(C) to serve the compelling state interest at issue.  The statute does no more than allow three people who believe that a child is in jeopardy to bring their concerns before a court; the outcome of the case after the court becomes involved does not directly affect them.  Beyond requiring a minimum of three petitioners before a court may act, custodial parents have additional protection against undue interference with their fundamental rights in that facially deficient petitions will, as here, be dismissed before a parent is required to defend at a hearing, and knowingly filing a false petition exposes the petitioners to criminal or civil action—a risk that persons who lack legitimate concerns regarding the child's welfare would presumably not take.[3]  *See, e.g.,* 17-A M.R.S. § 452 (2013) (defining the Class D crime of false swearing); *Malenko v. Handrahan*, 2012 WL 5267530, at *9 (D. Me. Oct. 24, 2012) (awarding damages for defamation for statements also made out of court).

---

[3] In this case the father was also protected by the trial court's procedural step at the case management conference of requiring the Petitioners to clarify their allegations by submitting "a statement of the[] Petition's allegations in an incident-by-incident format, setting forth the dates of each incident alleged and indicating which incidents are alleged to have taken place subsequent to all previous litigation involving this child and her parents."  The resulting detailed offer of proof, received by the court before it held a contested hearing, allowed it to fully consider the merits of the father's motion to dismiss, which it then granted.  Even if it had not, the statement of specific allegations would have served to put the father on notice concerning exactly what he would be required to defend against at a hearing.  We commend this practice to trial courts as a method of promoting judicial economy and protecting parents' fundamental rights.

[¶13]   In sum, because section 4032(1)(C) is narrowly tailored to serve a compelling state interest, *see Sparks*, 2013 ME 41, ¶ 20, 65 A.3d 1223, the statute is constitutional and the Petitioners had standing to proceed with their petition for a child protection order.

B.     Res Judicata

[¶14]   The court found that the Petitioners' allegations that the father had assaulted M.M. were barred by the doctrine of res judicata.   We review that determination de novo.  *Guardianship of Jewel M.*, 2010 ME 80, ¶ 38, 2 A.3d 301.

> [¶15]  It is well established that
>
> [t]here are two branches of the res judicata doctrine, issue preclusion and claim preclusion. . . . Claim preclusion bars the relitigation of claims if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action.

*Id.* ¶¶ 39-40.

[¶16]   Concerning the first requirement for establishing claim preclusion, the record contains ample evidence to support the court's finding that the Petitioners acted as the mother's privies.  "Privity exists when two parties have a commonality of ownership, control, and interest in a proceeding."  *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 20, 989 A.2d 733.  Here, (1) Petitioner Stephen Pickering worked for the mother as an investigator in her litigation against the father, and the petition

asserts and demonstrates that he "has been intimately involved with this case since February of 2011"; (2) the petition stated that the other Petitioners "have been involved since the beginning and have attended most of if not all court hearings associated with this case"; (3) the Petitioners acknowledged that they "brought the possibility of a Three Party Petition to [the mother's] attention" and that they "used [the mother] as a fact checker"; and (4) the petition did not simply ask the court to protect M.M., it requested a child protection order "specifically ordering that custody be granted to the mother," and it asked the court to "[o]rder each parent to pay . . . child support if the child is removed from the custody of the parent." We agree with the court's finding that the Petitioners' interests in this matter are indistinguishable from those of the mother.

[¶17] As to the second requirement, the court's 2012 order modifying the divorce decree was a valid final judgment. As to the third requirement, in that order the court discussed generally the mother's allegations of abuse occurring between August 2009 and March 2011, and specifically discussed the allegation that in March 2011 the father hit M.M. with a metal pan. In doing so, the court found that "[n]one of [the mother's] frequent and numerous accusations have been substantiated," and that the metal-pan accusation "is not only unsubstantiated, it is not true."

[¶18]   Although we have warned that "[p]rinciples of res judicata must be applied with caution in domestic relations cases," *Guardianship of Jewel M.*, 2010 ME 80, ¶ 41, 2 A.3d 301, both of the assaults asserted in the petition were alleged to have occurred before the 2012 order awarding sole parental rights and responsibilities to the father.  *Cf. id.* ¶ 42 (holding that a petition was not barred by res judicata because the issues that were raised arose, at least in part, after the operative judgment).  Because the mother, the Petitioners' privy, litigated or could have litigated her allegations that the father assaulted M.M. in 2010 and 2011 at the hearing on the motion to modify in 2012, and because the validity of those allegations was resolved against her in a final judgment, the Petitioners are barred from relitigating the same allegations now.

C.    Rule 12(b)(6)

[¶19]   The court found that the Petitioners' remaining claims were subject to dismissal pursuant to M.R. Civ. P. 12(b)(6), which permits a court to dispose of a petition for "failure to state a claim upon which relief can be granted."  The dismissed claims alleged that (1) the father denied the mother visitation, (2) in the father's pending divorce there were allegations that he verbally abused his current wife, and (3) the Department acted in an "inconsistent and contradictory" way concerning prior reports that the father had abused M.M.  Our review is de novo.  *Savage v. Me. Pretrial Servs., Inc.*, 2013 ME 9, ¶ 6, 58 A.3d 1138.  Taking the

allegations as true, *see Richardson*, 2009 ME 109, ¶ 5, 983 A.2d 400, the court correctly dismissed them for failing to state a valid claim.

[¶20] Concerning the visitation claim, a parent's denial of the other parent's court-ordered visitation may result in a finding of contempt of the order, *see Richards v. Thompson*, 2004 ME 25, ¶¶ 8-9, 842 A.2d 1289, but it does not create jeopardy to the child. *See* 22 M.R.S. § 4002(6) (2013) (defining "jeopardy" as "serious abuse or neglect"). Moreover, at the time the petition was brought, the court had ordered that the mother have no contact with M.M.

[¶21] As to the petition's claim that the father verbally abused his current wife, the court accurately noted that none of the allegations concerned verbal abuse directed at, or witnessed by, M.M. Accordingly, even if true, the allegations would be an insufficient basis for a finding that the father placed M.M. in jeopardy. *See* 22 M.R.S. § 4035(2) ("the court shall make a finding . . . as to whether *the child* is in circumstances of jeopardy to *the child's* health or welfare" (emphasis added)).

[¶22] The same is true for the Petitioners' claim that the Department failed to properly investigate prior claims of abuse—the Department's alleged shortcomings could evidence a failure to alleviate past jeopardy, but they could not create jeopardy. Furthermore, the petition's allegations, to the extent that they concern M.M. and not unrelated cases, involve the same time period that was

subject to the court's res judicata finding, which recognized that the mother's past allegations of abuse were found to be unsubstantiated or false.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Stephen J. Pickering, Robert F. Gilman, and Newbold Noyes, pro se appellants

Michael J. Waxman, Esq., Portland, for appellee father

Janet T. Mills, Attorney General, and Nora Sosnoff, Asst. Atty. Gen., Office of Attorney General, Augusta, for appellee Department of Health and Human Services

The mother did not file a brief.

Portland District Court docket number PC-2013-18
FOR CLERK REFERENCE ONLY