MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 20
Docket:        Yor-16-7
Submitted
  On Briefs:   October 13, 2016
Decided:       January 26, 2017

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

BANK OF AMERICA, N.A.

v.

JOHN CAMIRE

HUMPHREY, J.

[¶1]   John Camire appeals from a judgment of the District Court (Biddeford, *Cantara, J.*) entered in favor of Bank of America, N.A. (the Bank). The judgment arises out of an outstanding credit card debt.  We affirm the judgment in favor of the Bank, but because we conclude that the trial court erred in dismissing Camire's counterclaim, we vacate that portion of the judgment and remand the case for further proceedings.

## I.  BACKGROUND

[¶2]  On March 24, 2014, FIA Card Services, N.A., initiated this action in the District Court (Biddeford) against John Camire to recover damages totaling $11,573.40 arising out of a debt incurred using a Bank of America credit card.  Camire answered, moved to dismiss the complaint, and asserted

various affirmative defenses. He also filed a counterclaim pursuant to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.S. §§ 1692-1692p (LEXIS through Pub. L. No. 114-284); 32 M.R.S. §§ 11001-11054 (2016).[1]

[¶3] FIA Card Services moved to dismiss the counterclaim and attached an affidavit from its attorney, N. Laine Astbury, to the motion. Attached to the Astbury affidavit was a computer printout from the National Information Center, a website that purportedly maintains data collected by the Federal Reserve about financial institutions. Astbury averred, based on the printout, that FIA Card Services, N.A., acquired Bank of America, N.A., on October 20, 2006. Astbury also averred that the printout was authentic and admissible pursuant to M.R. Evid. 902(5), which provides that books, pamphlets, and official publications "purporting to be issued by a public authority" are self-authenticating.

[¶4] The court (*Cantara, J.*) denied Camire's motion to dismiss the complaint and granted the motion filed by FIA Card Services to dismiss Camire's counterclaim. In granting the motion to dismiss, the court concluded, based on the Astbury affidavit and printout, that FIA Card Services was not a third party collecting the debt, but rather stood in the place of Bank

---

[1] Camire's pleading is unclear as to whether he asserts a claim pursuant to the Maine FDCPA or the federal FDCPA. The trial court addressed both and our analysis follows accordingly.

of America, the card issuer that extended credit to Camire, and thus FIA Card Services was exempt from liability pursuant to the Act.[2]

[¶5]  On April 28, 2015, the court (*Driscoll, J.*) issued an order following a pretrial conference setting the matter for trial and stating that two hours or less would be required.  The Bank was substituted as the plaintiff on November 25, 2014.[3]  The court (*Cantara, J.*) held a bench trial on November 24, 2015.  The trial began at 1:14 p.m. and concluded at 4:55 p.m., running over the two hours allocated, even excluding breaks and recesses. The court reminded Camire of time constraints on numerous occasions during the trial, but allowed proceedings to continue longer than scheduled and beyond the extensions of time for testimony granted by the court during the trial.

[¶6]  The court entered a judgment in favor of the Bank in the amount of $11,573.40 plus costs.  Camire timely appealed.

---

[2]  Camire appealed the court's rulings on the motions and we dismissed the appeal as interlocutory.

[3]  At trial, the Bank's witness testified that FIA Card Services, N.A., was a division of Bank of America, N.A., that changed its name to Bank of America, N.A., in October 2015.

4

## II. DISCUSSION

### A. Due Process

[¶7] In this appeal, Camire primarily argues that the trial court failed to provide him with an adequate opportunity to present his defenses and thereby denied him due process of law. Camire contends that two hours were insufficient to present his case. "We review questions of law, including alleged constitutional violations . . . de novo." *Sparks v. Sparks*, 2013 ME 41, ¶ 19, 65 A.3d 1223 (quotation marks omitted).

[¶8] Procedural due process claims follow a two-step analysis: first, the claimant must demonstrate "a deprivation of . . . life, liberty or property interests" and "[s]econd, if such a deprivation has occurred, a determination must be made as to what process is due." *Jackson v. Town of Searsport*, 456 A.2d 852, 856 (Me. 1983). That Camire was deprived of a property interest is undisputed. The parties dispute the second step, whether Camire received adequate process.

> The fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right which the particular pertinent constitutional provision purports to protect. The notice and opportunity for a hearing must be granted at a meaningful time and in a meaningful manner.

*Kirkpatrick v. City of Bangor*, 1999 ME 73, ¶ 15, 728 A.2d 1268 (citation omitted) (quotation marks omitted). Procedural due process requires an opportunity to be heard, not an optimal opportunity to be heard. *See Portland Pipe Line Corp. v. Envtl. Improv. Comm'n*, 307 A.2d 1, 14 (Me. 1973) ("Procedural due process requires no particular form of procedure."). Unrepresented parties receive no special consideration and are held to the same standards as represented parties. *See New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 60 (Me. 1988). The trial court has discretion to reasonably manage time during evidentiary hearings. *See Dolliver v. Dolliver*, 2001 ME 144, ¶ 10, 782 A.2d 316 ("A trial court has broad discretion to control the order and timing of presentation of evidence and to set and enforce reasonable time limits on testimonial hearings."); M.R. Evid. 611(a).

[¶9] Contrary to Camire's assertions, he was not entitled to as much time as he wanted or believed he needed to present his case. Not only did the trial stretch longer than the two hours allocated, but Camire fails to explain what evidence, if any, he would have presented to the court with additional time. On numerous occasions when the court urged Camire to use time wisely

6

or to move the testimony forward, the court was enforcing relevance objections that it had sustained.[4]  *See* M.R. Evid. 401.

[¶10]  Because Camire received ample notice of time constraints, appeared at trial, and had an opportunity to present his defenses, we conclude that the trial court properly exercised its discretion in managing trial time and that no due process violation occurred.  *See Daud v. Abdullahi*, 2015 ME 48, ¶ 8 n.2, 115 A.3d 77 (concluding that no procedural due process violation occurred where an unrepresented defendant had sufficient time to prepare for hearing); *Sparks*, 2013 ME 41, ¶ 29, 65 A.3d 1223; *City of Old Town v. Dimoulas*, 2002 ME 133, ¶ 24, 803 A.2d 1018.

[¶11]  Camire raises no other argument concerning the judgment against him.  We therefore affirm the judgment in favor of the Bank in the amount of $11,573.40 plus costs.[5]

B.    Fair Debt Collection Practices Act Counterclaim

[¶12]  Camire contends that the court erred in dismissing his FDCPA counterclaim.  The court dismissed the counterclaim relying on the Astbury

---

[4] Camire does not argue that the court erred in any evidentiary rulings.

[5] Although Camire also asserted a counterclaim pursuant to the FDCPA, he does not argue, and the federal and Maine FDCPA do not provide, that an FDCPA violation is a defense to the underlying debt.  Remedies are limited to legal relief and attorney fees.  *See* 15 U.S.C.S. § 1692k (LEXIS through Pub. L. No. 114-284); 32 M.R.S. § 11054(1) (2016).  We accordingly affirm the judgment in favor of the Bank with respect to the debt.

affidavit attached to the Bank's motion to dismiss, effectively converting the motion to dismiss into one for summary judgment. *See* M.R. Civ. P. 12(b); *Beaucage v. City of Rockland*, 2000 ME 184, ¶ 5, 760 A.2d 1054. In these circumstances, we review the judgment to determine whether a genuine issue of material fact exists and whether the party that obtained a summary judgment is entitled to judgment as a matter of law. *See Libner v. Me. Cty. Comm'rs Ass'n*, 2004 ME 39, ¶ 8, 845 A.2d 570; *see also* M.R. Civ. P. 12(b), 56(c). The court relied on the Astbury affidavit and attached printout, but made no subsidiary factual findings and did not state the legal basis for admitting the evidence. We therefore review admission of the evidence for an abuse of discretion. *See State v. Mills*, 2006 ME 134, ¶ 8, 910 A.2d 1053.

[¶13] We begin with a summary of relevant FDCPA provisions—a legal issue of statutory interpretation that we review de novo. *Commerce Bank & Tr. Co. v. Dworman*, 2004 ME 142, ¶ 7, 861 A.2d 662. The Maine FDCPA and federal FDCPA each provide consumers with a private right of action against "debt collectors," as defined in each act. *See* 15 U.S.C.S. §§ 1692a(6), 1692k (LEXIS); 32 M.R.S. §§ 11002(6), 11054. Creditors are generally exempt from the definition of "debt collector" and are thereby exempt from FDCPA liability. *See* 15 U.S.C.S. § 1692a(6)(A) (LEXIS); 32 M.R.S. § 11003(1) (excluding from

the definition of "debt collector" "[a]ny officer or employee of a creditor while, in the name of the creditor, collecting debts for that creditor").  Pursuant to the Maine FDCPA, a creditor may, however, be considered a "debt collector" if, "in the process of collecting the creditor's own debts, [the creditor] uses any name other than the creditor's that would indicate that a 3rd person is collecting or attempting to collect these debts."  32 M.R.S. § 11002(6).  The federal FDCPA similarly defines "debt collector" to "include[] any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C.S. § 1692a(6) (LEXIS).

[¶14]  If FIA Card Services is not a "debt collector" as defined by the FDCPA, Camire's counterclaim would fail as a matter of law and FIA Card Services was entitled to a summary judgment.  *See* 15 U.S.C.S. §§ 1692a(6), 1692k (LEXIS); 32 M.R.S. §§ 11002(6), 11003(1), 11054.  The issue is whether admissible evidence in the record establishes without dispute that FIA Card Services is not a "debt collector" and thus exempt from liability pursuant to the Maine and federal FDCPA.

[¶15]  Relying on the Astbury affidavit, the court concluded that FIA Card Services was a "creditor" and not a "debt collector."  Astbury averred that

FIA Card Services, N.A., acquired Bank of America, N.A., on October 20, 2006, based upon an attached computer printout from the National Information Center's website. Astbury thus has no personal knowledge of the facts stated in the affidavit, but asserts that the printout is admissible pursuant to M.R. Evid. 902(5).

[¶16] Maine Rule of Evidence 902(5), however, is not an independent basis to admit evidence; it merely dispenses with ordinary authentication rules. *See State v. Lane*, 591 A.2d 866, 867 (Me. 1991) (explaining that a document within M.R. Evid. 902(5) requires no extrinsic evidence to establish authenticity, but does not render the evidence admissible, as "[t]he issue of admissibility is a completely separate question"); *see also* Field & Murray, *Maine Evidence* § 902.5 at 551 (6th ed. 2007) ("[S]elf-authentication under [Rule 902(5)] does not automatically make any document, public or private, admissible in evidence.").

[¶17] Therefore, even if the printout qualifies as a self-authenticating "official publication," which is unclear, *see* M.R. Evid. 902(5) Advisory Committee's Note to 1976 amend. (noting that records admissible pursuant to the rule "are most commonly statutes, court reports, rules, and regulations"), there must be an additional independent basis to properly admit and consider

the printout. *See Lane*, 591 A.2d at 867. The printout was offered to prove the truth of the matter asserted—that FIA Card Services and the Bank are one and the same—and is therefore hearsay. M.R. Evid. 801(c)(2), 802. The Bank makes no argument that the printout is admissible, but presumes as a factual matter that FIA Card Services is a creditor, and argues FIA Card Services is thus exempt from FDCPA liability.

[¶18] Yet even assuming that the affidavit and printout were admissible, and accepting that FIA Card Services is a "creditor" as defined by the FDCPA, this does not necessarily establish an exemption from FDCPA liability as a matter of law. *See FIA Card Servs. v. Saintonge*, 2013 ME 65, ¶ 3 n.1, 70 A.3d 1224 (assuming, without deciding, that a National Information Center printout, even if admissible, did not entitle the moving party to a summary judgment). This is because a creditor that uses a name other than its own to collect the debt may still be considered a "debt collector" pursuant to the FDCPA. *See* 15 U.S.C.S. §§ 1692a(6), (6)(A) (LEXIS); 32 M.R.S. § 11002(6) (stating that creditors may be "debt collectors" for the purposes of the Act if they use "*any name other than the creditor's* that would indicate that a 3rd person is collecting or attempting to collect these debts" (emphasis added)); 32 M.R.S. § 11003(1) (excluding "[a]ny officer or employee of a

creditor *while, in the name of the creditor*, collecting debts for that creditor" from the term "debt collector" (emphasis added)).

[¶19] As the plain language of the foregoing provisions makes clear, the name in which the creditor attempts to collect the debt matters. Here, it is undisputed that although Bank of America was the original creditor and card issuer, FIA Card Services brought suit against Camire to collect the debt.[6] Because FIA Card Services proceeded in its own name rather than in the name of the creditor, it failed to establish as a matter of law that it was not a "debt collector" and thereby exempt from FDCPA liability. *See* 15 U.S.C.S. §§ 1692a(6), (6)(A), 1692k (LEXIS); 32 M.R.S. §§ 11002(6), 11003(1), 11054. As a result, FIA Card Services was entitled to neither a summary judgment nor dismissal of Camire's counterclaim on the basis that it was exempt from FDCPA liability. *See id.*; *see also Libner*, 2004 ME 39, ¶ 8, 845 A.2d 570; M.R. Civ. P. 12(b), 56(c). Camire's pleading stated a claim for relief pursuant to the FDCPA in all other respects.[7] M.R. Civ. P. 12(b).

---

[6] The relationship between FIA Card Services, N.A., and Bank of America, N.A., is not entirely clear from the record. We conclude that the record developed at the time the court dismissed the counterclaim did not establish FIA Card Services was not a "debt collector" as a matter of law.

[7] Several Maine federal district court decisions have denied motions to dismiss Maine and federal FDCPA claims brought against third party entities, concluding that the pleadings established a plausible basis that the third party was a "debt collector" pursuant to the FDCPA. *See, e.g., Napolitano v. Green Tree Servicing, LLC*, No. 2:15-cv-00160-JAW, 2016 U.S. Dist. LEXIS 14122, at *24-25 (D. Me. Feb. 4, 2016) (concluding plaintiffs alleged sufficient facts for a servicer of a

12

[¶20] The court erred in concluding that FIA Card Services was exempt from the FDCPA as a matter of law. We therefore vacate the order dismissing the counterclaim and remand the case for further proceedings consistent with this opinion.

The entry is:

> The judgment in favor of Bank of America, N.A., in the amount of $11,573.40 plus costs is affirmed. The order dismissing Camire's FDCPA counterclaim is vacated, and the case is remanded for further proceedings consistent with this opinion.

---

John Camire, appellant pro se

Kate E. Conley, Esq., Susan J. Szwed, P.A., Portland, for appellee Bank of America, N.A.

Biddeford District Court docket number CV-2014-76
FOR CLERK REFERENCE ONLY

---

mortgage loan to be treated as a debt collector for federal FDCPA purposes); *Beaulieu v. Bank of Am., N.A.*, No. 1:14-cv-00023-GZS, 2014 U.S. Dist. LEXIS 136876, at *28-29 (D. Me. Sep. 29, 2014) ("At the motion to dismiss stage, these combined allegations plausibly suggest that BANA was 'using a name other than its own' that indicated a third party was attempting to collect on Mr. Beaulieu's default.").