PER CURIAM.
We grant certiorari, quash the trial court’s order, and remand for further proceedings. T.L., an eight-year-old child, seeks review of an order denying his motion to require the Department of Juvenile Justice (DJJ)[1] to provide treatment in restoring his competency so that he may stand trial in delinquency proceedings.
After evaluations by psychologists, the state and defense entered into a stipulated order, and the trial court found that T.L. was not competent to proceed to trial. Both the state and the defense agreed, based on the competency evaluation by a Dr. Bryan, that T.L. did not meet the criteria for involuntary hospitalization. Dr. Bryan recommended treatment and a more restricted placement than T.L. was then under.
The Florida Rules of Juvenile Procedure dictate the procedure applicable after a child *173 is declared incompetent. In pertinent part, rule 8.095(a)(4)(A) provides:
(A) If the child is not hospitalized because the child does not meet the criteria for involuntary hospitalization, the court shall order any appropriate nondelinquent treatment for the child in order to restore the child’s competence to proceed with an adjudicatory hearing, (emphasis added)
The attorney ad litem asserted that DJJ was responsible for the child pursuant to section 39.021(1), Florida Statutes (1995), which provides that the DJJ “shall plan, develop, and coordinate comprehensive services and programs statewide for the prevention, early intervention, control, and rehabilitative treatment of delinquent behavior.”
The trial court denied the motion, finding that the child, who had not been adjudicated delinquent, was not under the DJJ’s authority, and thus it was unclear which agency is responsible to assist in restoring his competency.
The trial court opined that it should be HRS’s responsibility to provide the necessary treatment. Hence, the trial court concluded that it lacked authority to mandate DJJ to provide these services, absent direction by a statute or rule. However, the court also declined to order HRS to provide T.L.’s treatment, noting that section 916.13, Florida Statutes, with analogous provision for adults, did not apply to juveniles, as juvenile proceedings are governed solely by the Rules of Juvenile Procedure and chapter 39, Florida Statutes. Department of Health and Rehabilitative Servs. v. State, 655 So.2d 227 (Fla. 5th DCA 1995). See also Department of Health & Rehabilitative Servs. v. A.E., 667 So.2d 429 (Fla. 2d DCA 1996).
Rather than order “appropriate non-delinquent treatment,” the trial court stated that DJJ and HRS should work together and that DJJ had suggested that they could facilitate making a referral to HRS and would keep the court notified of the child’s progress. The court denied T.L.’s motion, and ordered that DJJ “help to facilitate making referral” to HRS and “inform the parties and the Court as to the child’s progress on a regular basis.”
DJJ argues that there is no irreparable harm shown. However, in a report filed in response to this court’s order inquiring as to whether T.L. is obtaining treatment, this court is advised that the recommended residential treatment is not being provided. Although DJJ made the referral to HRS, it appears that HRS will not provide the services recommended without a court order requiring same.
DJJ contends that the trial court complied with the mandate of rule 8.095(a)(4)(A) by ordering DJJ to make a referral for treatment to HRS. However, the trial court’s order does not order treatment as required by the rule. Patently, ordering DJJ to “help to facilitate making referral” to HRS does not “order treatment.”
We note that DJJ contends that it is not the appropriate agency to provide the recommended care to T.L. Before the 1994 statutory amendment, all references to the “department” in chapter 39 referenced HRS. As a result of the amendment, part II of chapter 39, which concerns delinquency, now references DJJ. See § 39.0206, Fla.Stat. (1995). The “continuum” of services to be supplied under DJJ’s responsibility apparently includes matters involving juvenile crime before, during and after formal proceedings are initiated. See generally § 20.316(l)(b), Fla.Stat. (1995).
T.L. also directs this court to DJJ’s budget. Chapter 95-429, Laws of Florida, appropriation #547 entitled, “Special Categories Grants and Aids — Contracted Services,” includes $179,455,353 for contracted services to fulfill DJJ’s statutory responsibilities. Of these funds, certain amounts are specifically directed in proviso language, including the following:
provided for 9 months funding for contracting with ... the Department of Health and Rehabilitative Services to procure evaluations, therapy services, secure residential placements, and training of Juvenile Justice staff for juveniles charged with felonies who are found to be mentally incompetent to proceed through the adjudicatory process;
Ch. 95-429, Laws of Fla., at 3839.
On the other hand, HRS is responsible for administering mental health provisions under *174 chapter 394, Florida Statutes. Section 39.046, Florida Statutes (1995), says that whenever a child has been found to have committed a delinquent act or before such finding, the court may order the child to receive mental health services. Section 39.046(2) provides that if it is necessary to place the child in a residential facility for services, the procedures and criteria established in chapter 394 shall be used.
At the hearing, the trial court concluded that it could not order HRS to provide T.L. services pursuant to chapter 394, citing Department of Health and Rehabilitative Services v. State, 655 So.2d 227 (Fla. 5th DCA 1995). In that case, mentally retarded children involved in delinquency proceedings were found incompetent to stand trial. The issue was whether section 916.13, pertaining to the involuntary commitment of mentally ill defendants adjudicated incompetent to stand trial, was applicable to juveniles. The appellate court found that chapter 916 applied to adults only and that the procedures with respect to children could be found in rule 8.095 and chapter 39. Department of Health and Rehabilitative Services v. State predated the statutory amendments and the apparent division of labor between HRS and DJJ. It also predated the 1995 amendment to rule 8.095 that mandated the trial court to order treatment in instances such as this. We note that chapter 39 specifically cross-references chapter 394 in providing that if it is necessary to place a child in a residential facility for mental health services, the procedures and criteria established in chapter 394 shall be used. In that case, HRS apparently also conceded that the court can require it to seek a section 394 (mental health) commitment. 655 So.2d at 229.
The statutory scheme clearly recognizes the need for significant interplay between the agencies. When a child is in DJJ’s intake process, he is assigned a case manager. See § 39.047(l)(a)3., Fla.Stat. (1995). One of the duties of the case manager is to make recommendations for services and to facilitate the delivery of those services to the child, including any mental health services. See § 39.047(l)(a)4.e., Fla.Stat. (1995). On the other hand, each program administrator with HRS is directed to cooperate with the primary case manager in carrying out the duties and responsibilities noted. Id. It thus appears that DJJ is responsible for providing services to children in “intake” status and by statute HRS is directed to cooperate with DJJ in providing those services.
Because the trial court failed to comply with rule 8.095 we quash the trial court’s order and remand for the court to order the “appropriate nondelinquent treatment for the child in order to restore the child’s competence to proceed with an adjudicatory hearing.” Fla.R.Juv.P. 8.095(a)(4)(A) (emphasis added). As HRS is not a party to these proceedings, we decline to resolve any dispute between DJJ and HRS, as a matter of law, by this opinion.
If necessary, the trial court, on remand, shall cause both agencies to respond to its proposed order to the extent that either is impacted. We trust that by bringing both agencies before the court, they will find it more difficult to duck the state’s executive branch responsibility.
GLICKSTEIN, STONE and POLEN, JJ., concur.

. The issue presented arises out of an apparent conflict between HRS, which is not a party to this action, and the newly created (October 1994) Department of Juvenile Justice (DJJ). Pursuant to section 20.316(l)(b), Florida Statutes (1995), the secretary of juvenile justice is responsible for "planning, coordinating, and managing the delivery of all programs and services within the juvenile justice continuum....”